UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| NEW JERSEY STAFFING ALLIANCE, NEW JERSEY BUSINESS and INDUSTRY ASSOCIATION, and AMERCIAN STAFFING ASSOCIATION,<br><br>    Plaintiffs,<br><br>v.<br><br>STATE OF NEW JERSEY, ROBERT ASARO-ANGELO, COMMISSIONER of LABOR and WORKFORCE DEVELOPMENT, NEW JERSEY DEPARTMENT of LABOR and WORKFORCE DEVELOPMENT, CARI FAIS, ACTING DIRECTOR of the NEW JERSEY DIVISION OF CONSUMER AFFAIRS in the DEPARTMENT of LAW and PUBLIC SAFETY, NEW JERSEY DIVISION of CONSUMER AFFAIRS in the DEPARTMENT OF LAW and PUBLIC SAFETY,<br>    Defendants. | Civil Action No. 23-CV-02494 (CPO-MJS) |

**DEFENDANTS' SUPPLEMENTAL BRIEF OPPOSING ORDER TO SHOW CAUSE AND PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION**

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625-0112
Jessica.Palmer@law.njoag.gov
*Attorney for Defendants*

Angela Cai (NJ Bar No. 121692014)
*Deputy Solicitor General*

Jessica L. Palmer (NJ Bar No. 31222009)
Eve Weissman (NJ Bar No. 093902013)
Ashleigh Shelton (NJ Bar No. 294162019)
Mary Kenah (NJ Bar No. 314542019)
Nathaniel I. Levy (NJ Bar No. 386322021)
*Deputy Attorneys General*
        On the Brief

## **<u>TABLE OF CONTENTS</u>**

<u>**Page**</u>

INTRODUCTION. ..................................................................................................1

I. SECTION 7 IS NOT VOID FOR VAGUENESS. ...............................................1

   A.  Plaintiffs' Vagueness Challenge Does Not
      Meet The Extraordinarily Demanding Standard
      Applied To Civil Economic Legislation. ..........................................................1

   B.  Forthcoming Regulations Further Foreclose
      Plaintiffs' Vagueness Challenge. ......................................................................9

II.  Plaintiff's Cannot Succeed On Their State Law
     Claim That NJDOL Lacks Rulemaking Authority
     Under Section 7. .............................................................................................13

CONCLUSION. ..................................................................................................15

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*21st Century Oncology, Inc. v. Moody,*
    402 F. Supp. 3d 1351 (N.D. Fla. 2019) ..........................................................5

*CMR D.N. Corp. v. City of Phila.,*
    703 F.3d 612 (3d Cir. 2013) ...................................................................2, 3

*Coates v. City of Cincinnati,*
    402 U.S. 611 (1971) ....................................................................................2

*Connally v. General Const. Co.,*
    269 U.S. 385 (1926) ..................................................................................5, 6

*Corning Glass Works v. Brennan,*
    417 U.S. 118 (1974) ....................................................................................9

*E.E.O.C. v. McCarthy,*
    768 F.2d 1 (1st Cir. 1985)............................................................................8

*Echo Powerline, L.L.C. v. Occupational Safety & Health Rev. Comm'n,*
    968 F.3d 471 (5th Cir. 2020) ......................................................................2

*Esso Standard Oil Co. v. Holderman,*
    183 A.2d 454 (N.J. App. Div. 1962) ..........................................................14

*FTC v. Wyndham Worldwide Corp.,*
    799 F.3d 236 (3d Cir. 2015) ............................................................. 2, 3, 6

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ................................................................... 2, 10

*Grenewicz v. Ligham,*
    111 A.2d 293 (N.J. App. Div. 1955) ..........................................................15

*Harrison v. A & J Friedman Supply, Co.*,
    858 A.2d 567 (N.J. App. Div. 2004) ............................................................15

*Hejira Corp. v. MacFarlane*,
    660 F.2d 1356 (10th Cir. 1981) ....................................................................3

*Holder v. Humanitarian L. Project*,
    561 U.S. 1, 19-25 (2010) ..............................................................................10

*Interactive Media Ent. & Gaming Ass'n Inc. v. Att'y Gen. of U.S.*,
    580 F.3d 113 (3d Cir. 2009) .....................................................................5, 8

*J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*,
    650 F.3d 915 (3d Cir. 2011)……………………………………………......10

*Kolender v. Lawson*,
    461 U.S. 352 (1983) .....................................................................................11

*Moreno v. Att'y Gen. of United States*,
    887 F.3d 160 (3d Cir. 2018) .........................................................................3

*N.J. Guild of Hearing Aid Dispensers v. Long*,
    384 A.2d 795 (N.J. 1978) .............................................................................15

*Pa. Fed'n of Sportsmen's Clubs v. Hess*,
    297 F.3d 310 (3d Cir. 2002) ........................................................................13

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984).......................................................................................13

*San Filippo v. Bongiovanni*,
    961 F.2d 1125 (3d Cir. 1992) .......................................................................3

*Sessions v. Dimaya*,
    138 S. Ct. 1204 (2018).................................................................................6

*Smith v. Truman Rd. Dev., LLC*,
    414 F. Supp. 3d 1205 (W.D. Mo. 2019)......................................................10

*Sypniewski v. Warren Hills Reg'l Bd. of Educ.*,
    307 F.3d 243 (3d Cir. 2002) .........................................................................3

*Trojan Techs., Inc. v. Com. of Pa.*,
    916 F.2d 903 (3d Cir. 1990) .........................................................................5

*U.S. Sec. & Exch. Comm'n v. Hui Feng*,
    935 F.3d 721 (9th Cir. 2019) .......................................................................8

*U.S. Sec. & Exch. Comm'n v. Kik Interactive Inc.*,
    492 F. Supp. 3d 169 (S.D.N.Y. 2020) ........................................................10

*United States Telecom Ass'n v. Federal Communications Commission*,
    825 F.3d 674, 736 (D.C.C. 2016) .................................................................5

*United States v. Lachman*,
    387 F.3d 42 (1st Cir. 2004).................................................................. 3, 5, 7

*United States v. Search of Music City Mktg., Inc.*,
    212 F.3d 920 (6th Cir. 2000) .......................................................................3

*United States v. Williams*,
    553 U.S. 285 (2008) .....................................................................................8

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
    455 U.S. 489 (1982)..................................................................................6, 7

**Statutes**

29 U.S.C. § 206(d)(1)......................................................................................7

N.J. Stat. Ann. § 10:5-12(t)..........................................................................6, 7

N.J. Stat. Ann. § 34:1A-3(e) .........................................................................14

N.J. Stat. Ann. § 34:11-56.61..........................................................................6

N.J. Stat. Ann. § 34:1-20...................................................................................... 14, 15

N.J. Stat. Ann. § 34:8D-7(b) ....................................................................................4

N.J. Stat. Ann. § 52:14B-1 ......................................................................................11

## **Regulations**

29 C.F.R. § 1620.13(e)...............................................................................................8

29 C.F.R. § 1620.15 ..................................................................................................8

29 C.F.R. § 1620.16 ..................................................................................................9

29 C.F.R. § 1620.17 ..................................................................................................9

29 C.F.R. § 1620.18 ..................................................................................................9

N.J. Admin. Code § 12:66-2.4  …………………………………………………........7

N.J. Admin. Code § 12:60-2.1 .................................................................................7

## INTRODUCTION

Plaintiffs' void for vagueness challenge to Section 7 of the Temporary Workers Bill of Rights (TWBR) has no likelihood of success on the merits because Plaintiffs cannot satisfy the demanding standard for vagueness challenges to civil economic statutes: that the law provides "no rule or standard at all." That is not so here, where the statute sets forth a specific mandate of fair pay, and where the required comparator analysis and identification of employee benefits falls squarely within the scope of Plaintiffs' expertise. And Section 7 is no more unclear than other statutes that have survived vagueness challenges under Third Circuit precedent.

The statute thus survives constitutional scrutiny on its face. But were there any doubt, the forthcoming notice of proposed rulemaking from the NJ Department of Labor & Workforce Development (NJDOL)—which will likely be made publicly available by July 21—only further weakens Plaintiffs' claim. Finally, this Court lacks jurisdiction to adjudicate Plaintiffs' challenge to NJDOL's rulemaking authority (although the challenge fails on the merits). No injunction is warranted.

I. **SECTION 7 IS NOT VOID FOR VAGUENESS.**

   A. **Plaintiffs' Vagueness Challenge Does Not Meet The Extraordinarily Demanding Standard Applied To Civil Economic Legislation.**

Section 7(b)'s fair-pay standard, which calls for fair pay for 'the same or substantially similar work,' is not void for vagueness. The statute provides sufficient notice to regulated entities and amply satisfies the "no rule or standard at all" test.

1

*First*, as the State has explained, PI Opp. (ECF 18) at 23-34, vagueness doctrine is "especially lax" for economic legislation. *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 250 (3d Cir. 2015). To be held unconstitutionally vague, a law must be "so vague as to be 'no rule or standard at all.'" *Id.* (quoting *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 631-32 (3d Cir. 2013)); *see also Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (noting all that is required for economic legislation to overcome a vagueness challenge is to be "comprehensible"). Plaintiffs do not—and cannot—dispute that "no rule or standard at all" is the governing legal rule. Nor do Plaintiffs even attempt to meet that high burden.

Instead, Plaintiffs' argument boils down to the notion that because they have raised *questions* about how to "calculate average wages and average cost of benefits" in certain applications, PI Reply (ECF 19) at 9, Section 7 must be struck down. But the test for constitutional vagueness claims is *not* whether a law was "drafted with the utmost precision," *Echo Powerline, L.L.C. v. Occupational Safety & Health Rev. Comm'n*, 968 F.3d 471, 477 (5th Cir. 2020), or whether it "contain[s] some ambiguities" that produce questions of interpretation, *CMR*, 703 F.3d at 631. After all, "the meaning of (disputed) terms" is a question in many—if not all—statutes, and a contrary rule would render many economic statutes unconstitutional. *Grayned v. City of Rockford*, 408 U.S. 104, 110 n.15 (1972). Thus, the mere "fact that different minds reach different results when applying" a law is no reason to hold it void for

2

vagueness. *United States v. Search of Music City Mktg., Inc.*, 212 F.3d 920, 926 n.5 (6th Cir. 2000); *United States v. Lachman*, 387 F.3d 42, 57 (1st Cir. 2004) (mere questions of interpretation do not render vague laws "addressed to sophisticated businessmen and corporations which ... necessarily consult counsel in planning their activities"); *Hejira Corp. v. MacFarlane*, 660 F.2d 1356, 1367 (10th Cir. 1981).

That the Third Circuit has repeatedly upheld civil economic statutes against vagueness challenges is instructive. For example, in *Wyndham Worldwide*, 799 F.3d at 255, the Court rejected a vagueness challenge to a federal statute prohibiting "unfair or deceptive acts or practices" even though the Court acknowledged that application of that "far from precise" standard turns on "a number of relevant factors." And in *CMR*, 703 F.3d at 631, the Court rejected a vagueness challenge to a local zoning ordinance requiring "development appropriate in scale, density, character and use," despite recognizing some applications involve "close call[s]." And the Third Circuit has upheld other civil statutes against vagueness challenges. *See, e.g.*, *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 266 (3d Cir. 2002) (school rule prohibiting possession of "racially divisive" material not void for vagueness); *Moreno v. Att'y Gen. of United States*, 887 F.3d 160, 166 (3d Cir. 2018) ("crime involving moral turpitude" in immigration statute not vague); *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1137 (3d Cir. 1992) (dismissal regulations for "failure to maintain … sound scholarship and competent teaching" not vague).

The plain language of Section 7(b) sets out a specific rule for fair pay that far surpasses the "no rule or standard at all" test, and surpasses the standards that the Third Circuit has already upheld. Under Section 7(b), if a temporary laborer in a designated classification placement performs "the same or substantially similar work" as permanent employees "under similar working conditions," such temporary laborer must be paid at least "the average rate of pay and average cost of benefits, or the cash equivalent," of their comparators. N.J. Stat. Ann. § 34:8D-7(b). The TWBR further narrows the definition of comparators to those who perform substantially similar work "on jobs the performance of which requires equal skill, effort, and responsibility." *Id.* These are plainly comprehensible standards.

Moreover, that the entities subject to Section 7 are sophisticated businesses familiar with the "conditions" of temporary employment in their industries, as indicated by Plaintiffs' numerous declarations, *see* ECF 29 at 2-3, makes the instant challenge even less meritorious. Section 7's assessments fall within the scope of Plaintiffs' members' business. Staffing agencies match job applicants with available jobs, which in turn involves assessing both an applicant's qualifications and a job's requirements. *See* PI Opp. at 26 (citing evidence from Plaintiffs' own submissions and websites). Operating a staffing agency or running a business with permanent employees typically involves paying employees and providing benefits. Section 7's required evaluations fall squarely within the ken of these regulated entities. *See*

*United States Telecom Ass'n v. Federal Commc'n Comm'n*, 825 F.3d 674, 736 (D.C.C. 2016); *Lachman*, 387 F.3d at 57. Plaintiffs have not established that Section 7(b) raises more questions of interpretation than other "complex ... regulatory regime[s]." *Lachman*, 387 F.3d at 57.

To be sure, Section 7(b) imposes new compliance burdens on staffing agencies and their clients. But the test for *vagueness* is not whether a law "is burdensome." *21st Century Oncology, Inc. v. Moody*, 402 F. Supp. 3d 1351, 1364 (N.D. Fla. 2019); *see also Trojan Techs., Inc. v. Com. of Pa.*, 916 F.2d 903, 915 (3d Cir. 1990) ("Inability to satisfy a clear but demanding standard is different from inability in the first instance to determine what the standard is."); *Interactive Media Ent. & Gaming Ass'n Inc. v. Att'y Gen. of U.S.*, 580 F.3d 113, 116 (3d Cir. 2009) (same). Thus, Plaintiffs' suggestions that staffing agency clients might decline to provide relevant information and that the requirements have negative economic impacts are arguments about whether the statutory standards are demanding, and not germane to the legal standard for a void-for-vagueness claim.

Nothing in Plaintiffs' latest submission salvages their vagueness argument. Their extensive discussion of *Connally v. General Const. Co.*, 269 U.S. 385 (1926), is unavailing. Unlike the TWBR, the statute in *Connally* carried criminal penalties and the regulated entities faced "many years of imprisonment." *Id.* at 390. Criminal provisions are subject to a higher vagueness standard than economic regulations like

5

the TWBR, *see Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982); *Wyndham Worldwide*, 799 F.3d at 250. Indeed, subsequent courts have primarily invoked *Connally* as an illustration of vagueness doctrine as applied to a penal law. *See, e.g.*, *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018).[1]

**Second**, even if mere questions of statutory interpretation *could* render a civil economic statute unconstitutionally vague, Plaintiffs' claim would still fail because existing statutes applicable to New Jersey employers invoke similar language and standards to those found in the TWBR. Established authority thus provides a road-map to how the TWBR is intended to operate.

Plaintiffs' assertion that they "cannot even fathom" how to identify "benefits" or quantify their "cash equivalent" as required by Section 7(b), ECF 29 at 3, is belied by the fact that these statutory terms are not unusual. Notably, N.J. Stat. Ann. § 10:5-12(t), to which Plaintiffs' members are already subject, prohibits discrimination in "compensation, including benefits." Similarly, the New Jersey Prevailing Wage Act mandates recordkeeping of both wages and "*any* benefits paid to each worker" pursuant to state contracts for public works. N.J. Stat. Ann. § 34:11-56.61 (emphasis added). And NJDOL regulations require contractors "performing construction work

---

[1] In any event, the statute in *Connally* had defects absent here:  among other things, it employed terms lacking "a well-settled ... meaning," *cf. infra* 6-9, and mandated pay at a prevailing "rate of wages" without specifying whether the required "rate" was a minimum, maximum, or "average of all rates," 269 U.S. at 394. Section 7, by contrast, explicitly requires an average.

6

on a public utility" to maintain "payroll record[s]," N.J. Admin. Code § 12:66-2.4, expressly defined to mean both pay *and* benefits, N.J. Admin. Code § 12:60-2.1 ("payroll record" includes "[a]ny fringe benefits paid to approved plans, funds or programs on behalf of the employee" and "[f]ringe benefits paid in cash to the employee"). A business subject to the TWBR—or counsel assisting them, *see Lachman*, 387 F.3d at 57—could surely look to these laws, among others, for guidance on how to interpret "benefits" in the context of Section 7(b), if any such guidance were necessary. That is especially true given the overlap in work regulated by these statutes and the TWBR. *See* PI Opp. 5 n.2.

Nor is the rest of the comparator analysis required by the fair-pay provision—which entails a fact-sensitive assessment of "working conditions" and "skill, effort, and responsibility"—unfamiliar to Plaintiffs. As the State has explained, the federal Equal Pay Act and New Jersey's Diane B. Allen Equal Pay Act—statutes to which Plaintiffs' members are *already subject*—have long required employers to conduct similar analyses. PI Opp. 27-28 (discussing 29 U.S.C. § 206(d)(1) and N.J. Stat. Ann. § 10:5-12(t)); *see Vill. of Hoffman Ests.*, 455 U.S. at 498 ("[B]usinesses ... can be expected to consult relevant legislation in advance of action."). It is of no moment that those two statutes provide negative commands against discrimination whereas Section 7(b) affirmatively mandates fair pay. All three establish substantive requirements pertaining to similarly situated workers in a given workplace, defined

by the "working conditions" and the "skill, effort, and responsibility" required of comparators' jobs. Plaintiffs have not cited a single case suggesting these provisions in the federal and state equal pay laws are vague, nor is the State aware of any. *See, e.g., E.E.O.C. v. McCarthy*, 768 F.2d 1, 3 (1st Cir. 1985) (rejecting vagueness challenge and describing federal Equal Pay Act as "constitutionally clear").

Interpretations of the federal and state equal pay laws also provide guidance on the meaning and application of the key terms in Section 7(b). *See, e.g., Interactive Media*, 580 F.3d at 117 n.6 (noting that the federal Unlawful Internet Gambling Enforcement Act that requires "financial institutions to block or restrict transactions" is not void for vagueness when the duty is not "not materially different from similar duties imposed on financial institutions under other federal law"); *U.S. Sec. & Exch. Comm'n v. Hui Feng*, 935 F.3d 721, 734 n.8 (9th Cir. 2019) ("A word is not vague when it has a 'settled legal meaning.'") (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008)). The extensive body of case law and regulations interpreting the federal Equal Pay Act provide guidance on how to conduct comparator analysis. For example, it is well-settled that the analysis is a fact-sensitive one, and cannot be conducted based on job descriptions alone. *See* 29 C.F.R. § 1620.13(e); PI Opp. 28. And evaluating "skill" includes "consideration of such factors as experience, training, education, and ability." 29 C.F.R. § 1620.15. Evaluating "similar working conditions" requires using "practical judgment" when assessing a job's

8

"surroundings" and "hazards," 29 C.F.R. § 1620.18[2]; *see* 29 C.F.R. § 1620.16 (clarifying "effort"); *see* 29 C.F.R. § 1620.17 (clarifying "responsibility"). As for New Jersey's Diane B. Allen Equal Pay Act, enacted in 2018, guidance issued by the New Jersey Division on Civil Rights in 2020 shows that agency's understanding of the law largely tracks authoritative interpretations of comparable language in the federal law. *See* Division on Civil Rights, Guidance on the Diane B. Allen Equal Pay Act (Mar. 2020), at 6-8, https://tinyurl.com/ye27t8w8. In short, because well-worn employment-law authorities shed light on existing compliance obligations under equal pay laws, Plaintiffs' complaints about strikingly similar language in the TWBR fall flat.

### B.   Forthcoming Regulations Further Foreclose Plaintiffs' Vagueness Challenge.

Section 7 is not unconstitutionally vague on its face for the reasons stated above. But were there any doubt on that score, NJDOL's forthcoming proposed rulemaking[3] by July 21 will further explicate the agency's own interpretation of the

---

[2] But "working conditions" "does not encompass shift differentials." 29 C.F.R. § 1620.18; *see Corning Glass Works v. Brennan*, 417 US 188, 202 (1974); *cf.* Tr. 18-19, 94.

[3] NJDOL intends to post a copy of the notice of proposed rulemaking on its website contemporaneous to submitting it to the Office of Administrative Law for publication in the New Jersey Register, after which rulemaking will proceed in the typical course. *See* https://www.state.nj.us/oal/rules/schedule/. Defendants will update this Court when the notice is posted publicly.

statute, and foreclose any contention that Plaintiffs lack guidance on how the statute will be enforced.

As an initial matter, regulations—which are not required under Section 7— are not constitutionally *necessary* because the statute already establishes a sufficient standard to satisfy the due process clause. That is typical: statutes often survive void-for-vagueness challenges without regulatory guidance or rulemaking. *See, e.g.*, *Holder v. Humanitarian L. Project*, 561 U.S. 1, 19-25 (2010) (criminal statute); *Grayned*, 408 U.S. at 112 (municipal ordinance); *J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 936 (3d Cir. 2011) (school district policies); *see also, e.g.*, *U.S. Sec. & Exch. Comm'n v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 183 (S.D.N.Y. 2020) (agency's "failure to issue guidance on ... enforcement" did not render statute vague); *Smith v. Truman Rd. Dev., LLC*, 414 F. Supp. 3d 1205, 1240 (W.D. Mo. 2019) (rejecting vagueness challenge to "automated telephone dialing system" based on statutory text alone, noting statute was in effect for 11 years before regulations were issued). Section 7(b) of the TWBR no more *needs* interpretive regulations or guidelines to survive a vagueness challenge than these standards.

Nonetheless, the forthcoming release of the notice of proposed regulations by NJDOL—anticipated by July 21, two weeks before the rest of the TWBR takes effect—will provide additional guidance on the fair-pay provision. The proposed regulations will confirm that the general principles for interpreting the same or

similar terms in the federal and state equal pay laws will guide Section 7's comparator analysis. And that can only further support the constitutionality of Section 7 against a void-for-vagueness challenge.[4] The proposed rules provide public notice of the enforcing agency's *own* interpretation of the statute. And NJDOL will bind itself to its own interpretation of the Statute and only enforce the law in a manner consistent with its own proposed regulations. That eliminates any specter of concern about arbitrary enforcement—which is ultimately the "more important aspect of vagueness doctrine." *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983) (noting doctrine merely requires "minimal guidelines" to avoid "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections").

As part of the rulemaking process set forth in the Administrative Procedure Act, N.J. Stat. Ann. § 52:14B-1 et seq., the regulated community will have the opportunity to publicly comment on the proposed rulemaking, and any perceived shortcomings or asserted lack of clarity. NJDOL is required to address every comment received in response to the proposed rulemaking before adopting the final

---

[4] Plaintiffs are plainly wrong to contend that the very fact of rulemaking "is a de facto admission that the Legislation requires elaboration thorough regulations to make the Legislation comprehensible." ECF 29 at 3. If the fact of rulemaking itself makes the statute unconstitutionally vague, that would mean vast swaths of federal and state statutes would be unconstitutional absent rulemaking—a remarkable proposition.

rule, and additionally has the opportunity to amend the rule before adoption in response to such comments. In short, while forthcoming regulations are not necessary to defeat Plaintiffs' vagueness claim, that Plaintiffs will have further guidance from NJDOL on its interpretation of Section 7(b) and a commitment to enforce the statute in accordance with that interpretation only confirms Plaintiffs are unlikely to prevail on this challenge.

Finally, there is no basis to consent to or require "a limited preliminary restraint." ECF 29 at 10. Any injunction against a duly-enacted statute is an extraordinary remedy, which cannot be awarded merely because a plaintiff raises questions about specific applications. And Plaintiffs' proposal of a blanket stay of enforcement means that NJDOL could not correct even patent violations of the pay-equity provision—such as if a temporary worker in a designated classification placement were paid $20 per hour for work in every way identical to that performed by five permanent employees, who were each paid $30 per hour. Should that occur after August 5, enforcement of Section 7 follows the expressed will of the Legislature, and the advice of the Governor, which directed that Section 7 take effect by operation of law by that date. Thus, while NJDOL will continue to exercise enforcement discretion—including a commitment to take good-faith efforts to comply with Section 7 into account when enforcing that provision pending final rulemaking, blanket non-enforcement is not appropriate. After all, this is not a case

in which the statutory provision at issue requires agency action before public compliance, such as statutes requiring the agency to create a licensing process before regulated entities apply under that process. Instead, the statute is a legal requirement that is valid on its face, and no injunction or stay of enforcement is appropriate.

## II.   Plaintiffs' Cannot Succeed On Their State Law Claim That NJDOL Lacks Rulemaking Authority Under Section 7.

As discussed above, because the forthcoming notice of proposed rulemaking reflects NJDOL's own interpretation of the statute, its issuance alone—regardless of final adoption—is enough to alleviate any lingering vagueness concerns. But in any event, Plaintiffs new claim regarding NJDOL's rulemaking authority is barred by sovereign immunity.[5] It is blackletter law that while litigants may seek prospective relief in federal court to prevent violations of federal law by state officials, no such allowance exists for claims under state law. *See* PI Opp. 12 (explaining state law claims are barred by sovereign-immunity); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Pa. Fed'n of Sportsmen's Clubs v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) ("Suit for violations of state law brought against a state or its officials ... may simply not be brought in federal court."). This principle precludes federal courts from granting relief based on arguments that state officials failed "to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106; *see id.*

---

[5] Plaintiffs first raised this question in their preliminary-injunction reply brief.

(noting "it is difficult to think of a greater intrusion on state sovereignty" than when a federal court passes on the merits of such a claim). Sovereign immunity thus bars any claim in this court about whether NJDOL's rulemaking authority under the TWBR extends to Section 7—a question of state law. *See id.* at 101 n.11.[6]

Even so, Plaintiffs' objection lacks merit. For one, the very statute that sets forth the powers and responsibilities of NJDOL explicitly provides that "The commissioner may make and publish rules and regulations not inconsistent with law as he shall deem necessary to enforce the provisions of this title." N.J. Stat. Ann. § 34:1-20. *See also* N.J. Stat. Ann. § 34:1A-3(e) ("The commissioner shall ... [a]dopt, issue and promulgate, in the name of the department, such rules and regulations as may be authorized by law.").

Plaintiffs' argument—that the Commissioner only has rulemaking authority when *another* statutory provision explicitly provides for it—would make the general grants of rulemaking authority in N.J. Stat. Ann. § 34:1-20 and § 34:1A-3(e) dead letters. And New Jersey precedents confirm the same. In *Esso Standard Oil Co. v. Holderman*, 183 A.2d 454, 461 (N.J. App. Div. 1962), *aff'd*, 188 A.2d 599 (N.J. 1963), the court cited the very above-listed statutory grants of rulemaking authority as the source of rulemaking authority for the challenged regulations. And under New

---

[6] Of course, Plaintiffs are free to bring a claim challenging NJDOL rulemaking under Section 7 as *ultra vires*—and any other substantive challenge to the forthcoming regulations—in New Jersey state court.

Jersey law, "[t]he presumption is in favor of conformity, and a regulation will not be set aside unless it is plainly and palpably inconsistent with the statute," *Grenewicz v. Ligham*, 111 A.2d 293, 297-98 (N.J. App. Div. 1955). As the court in *Harrison v. A & J Friedman Supply, Co.*, 858 A.2d 567, 569 (N.J. App. Div. 2004) explained, the broad rulemaking authority in N.J. Stat. Ann. § 34:1-20 is limited only by the "not inconsistent with law" language, which means the content of regulations must not be "plainly and palpably inconsistent" with statutory law. That is not a limit on the delegation of rulemaking power in the first instance, as Plaintiffs argue here.

Even putting the broad delegation in the enabling acts aside, the New Jersey Supreme Court has long instructed that courts may find an "implicitly supplied" delegation by "look[ing] beyond the specific terms of the enabling act to the statutory policy sought to be achieved [and] examining the entire statute in light of its surroundings and objectives." *N.J. Guild of Hearing Aid Dispensers v. Long*, 384 A.2d 795, 804 (N.J. 1978). Here, a reviewing state court could well determine that a delegation of rulemaking authority is implicit in the statutory scheme and purpose of protecting the most vulnerable temporary laborers.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' request for a preliminary injunction.

Dated: July 10, 2023

Respectfully submitted,
MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

*/s/ Jessica Palmer*

Deputy Attorney General
25 Market Street, 8th Floor
Trenton, NJ 08625-0093
Tel: (609) 376-3377
Jessica.Palmer@law.njoag.gov
*Attorneys for Defendants*

16