**JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.**
Steven B. Harz, Esq. I.D. #: 006921977
David L. Menzel, Esq. I.D. #: 003571973
Rubin M. Sinins, Esq. I.D. #: 046701994
505 Morris Avenue, Suite 200
Springfield, NJ 07081
Tel #: (973) 379-4200
Direct Line #: (973) 248-4522
Fax #: (973) 379-7872
sharz@lawjw.com

Anthony F. Shelley (*Pro Hac Vice* Admission Motion Forthcoming)
Joanne Roskey (*Pro Hac Vice* Admission Motion Forthcoming)
**MILLER & CHEVALIER CHARTERED**
900 Sixteenth St. NW
Black Lives Matter Plaza
Washington, DC 20006
Tel #: (202) 626-5800
Fax #: (202) 626-5801
ashelley@milchev.com

*Attorneys for Plaintiffs New Jersey Staffing Alliance, New Jersey Business and
Industry Association, and American Staffing Association*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY STAFFING ALLIANCE, *et al.*,<br><br>      Plaintiffs,<br><br>v.<br><br>CARI FAIS, *Acting Director of the New Jersey Division of Consumer Affairs in the Department of Law and Public Safety, et al.*,<br><br>      Defendants. | No. 1:23-cv-02494-CPO-MJS<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR INDICATIVE RULING** |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................. 3

I.     The Equal-Benefits Provision ................................................................ 3

II.    The Original and First Amended Complaints ....................................... 5

III.   The Court's Prior, and the Third Circuit's Pending, Proceedings
Concerning the Act ................................................................................ 6

ARGUMENT ................................................................................................. 7

I.     THE FIRST AMENDED COMPLAINT AND MOTION FOR
AN INDICATIVE RULING ARE PROPERLY BEFORE THE
COURT ................................................................................................... 7

II.    PLAINTIFFS SATISFY THE REQUIREMENTS FOR
PRELIMINARY RELIEF ........................................................................ 11

    A.    Plaintiffs Are Likely to Succeed on the Merits of Their
ERISA-Preemption Claim ................................................................ 12

        1.    The Equal-Benefits Provision Has a "Connection
with" ERISA Plans ................................................................ 13

            a.    Under the Reasoning of *Flanagan*, the Act's
Equal-Benefits Provision Has a "Connection
with" ERISA Plans ................................................. 14

            b.    The Act's Equal-Benefits Provision Has
Greater "Connection with" ERISA Plans
than Its Analogue in *Flanagan* .............................. 19

        2.    The Equal-Benefits Provision "References"
ERISA Plans .......................................................................... 23

    B.    Plaintiffs Are Irreparably Harmed by the Act's Equal-
Benefits Provision ............................................................................ 27

C.    A PI Will Not Harm the Other Parties ...................................................31

D.    The Public Interest Favors Issuance of a PI .......................................32

CONCLUSION ..................................................................................................33

CERTIFICATE OF SERVICE ............................................................................*Post*

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Trucking Ass'n v. City of Los Angeles,*
  559 F.3d 1046 (9th Cir. 2009)...................................................................33

*Amarin Pharms. Ireland Ltd. v. FDA.,*
  139 F. Supp. 3d 437 (D.D.C. 2015) ..........................................................10

*Angst v. Mack Trucks, Inc.,*
  969 F.2d 1530 (3d Cir. 1992)....................................................................19

*Brennan v. William Paterson College,*
  492 F. App'x 258 (3d Cir. 2012).................................................................9

*Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A.,*
  519 U.S. 316 (1997) ............................................................................13, 26

*Coastal Corp. v. Texas E. Corp.,*
  869 F.2d 817 (5th Cir. 1989)......................................................................9

*Conkright v. Frommert,*
  559 U.S. 506 (2010) ..................................................................................27

*District of Columbia v. Greater Wash. Bd. of Trade,*
  506 U.S. 125 (1992) ................................................................2, 23, 24, 26

*Egelhoff v. Egelhoff,*
  532 U.S. 141 (2001) ..........................................................................*passim*

*Favia v. Indiana Univ. of Pa.,*
  7 F.3d 332 (3d Cir. 1993)..........................................................................10

*Fort Halifax Co., Inc. v. Coyne,*
  482 U.S. 1 (1987) ......................................................................................17

*Girardot v. Chemours Co.,*
  2017 U.S. Dist. LEXIS 46103 (D. Del. Mar. 29, 2017)...........................19

*Gobeille v. Liberty Mut. Ins. Co.,*
  577 U.S. 312 (2016) ......................................................................13, 21, 22

*Greater Wash. Bd. of Trade v. District of Columbia,*
  948 F.2d 1317 (D.C. Cir. 1991), *aff'd*, 506 U.S. 125 (1992) ..............................27

*Ingersoll-Rand Co. v. McClendon,*
  498 U.S. 133 (1990) ........................................................................................18, 22

*Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. E. Air
  Lines, Inc.*, 847 F.2d 1014 (2d Cir. 1988) .................................................................9

*ITServe All., Inc. v. Scalia,*
  No. 20-14604, 2020 WL 7074391 (D.N.J. Dec. 3, 2020) ...................................28

*Menkes v. Prudential Ins. Co. of Am.*,
  762 F.3d 285 (3d Cir. 2014)...................................................................................19

*Merits Constr. All. v. City of Quincy,*
  759 F.3d 122 (1st Cir. 2014) ..................................................................................16

*Metro. Life Ins. Co. v. Massachusetts*,
  471 U.S. 724 (1985).................................................................................................18

*Minard Run Oil Co. v. U.S. Forest Serv.*,
  670 F.3d 236 (3d Cir. 2011)....................................................................................29

*MZM Constr. Co. v. New Jersey Bldg. Laborers' Statewide Benefit
  Funds*, No. CV 18-16328, 2019 U.S. Dist. 136896 (D.N.J. Aug.
  14, 2019), *aff'd sub nom. MZM Constr. Co., Inc. v. N.J. Bldg.
  Laborers Statewide Benefit Funds*, 974 F.3d 386 (3d Cir. 2020) ......................9

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins.
  Co.*, 514 U.S. 645 (1995) ................................................................................13, 22

*Ortho Pharm. Corp. v. Amgen, Inc.*,
  887 F.2d 460 (3d Cir. 1989)................................................................................9, 10

*Pane v. RCA Corp.*,
  667 F. Supp. 168 (D.N.J. 1987), *aff'd*, 868 F.2d 631 (3d Cir. 1989)...........18, 19

*Reilly v. City of Harrisburg,*
  858 F.3d 173 (3d Cir. 2017).....................................................................................12

*Ret. Bd. of Policemen's Annuity & Ben. Fund v. Bank of New York
  Mellon*, 297 F.R.D. 218 (S.D.N.Y. 2013) ...........................................................10

*Retail Indus. Leaders Ass'n v. Fielder*,
 475 F.3d 180 (4th Cir. 2007) ............................................................ 15, 16, 18

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
 592 U.S. 80 (2020) .................................................................................... 13

*Staffing Servs. Ass'n of Ill. v. Flanagan*,
 No. 23-C-16203, 2024 U.S. Dist. LEXIS 42102 (N.D. Ill. Mar. 11,
 2024) ............................................................................................... *passim*

*Testa v. DOJ*,
 No. 21-18569, 2023 U.S. Dist. LEXIS 162096 (D.N.J. Sept. 13,
 2023) ................................................................................................... 10

*Zgrablich v. Cardone Indus.*,
 2016 U.S. Dist. LEXIS 13338 (E.D. Pa. Feb. 23, 2016) ............................ 19

**Constitution and Statutes**

U.S. Const. art. VI ............................................................................................ 5

28 U.S.C. § 1292 .............................................................................................. 6

Employee Retirement Income Security Act of 1974,
 29 U.S.C. §§ 1001 *et seq.* ............................................................................ 1
 29 U.S.C. § 1002 ........................................................................ 12, 24, 25, 26
 29 U.S.C. § 1003 ................................................................................... 12, 23
 29 U.S.C. § 1132 ................................................................................... 22, 23
 29 U.S.C. § 1144 ........................................................................................ 12

42 U.S.C. § 1983 .............................................................................................. 5

820 Ill. Comp. Stat. 175/42 ........................................................................... 14

N.J. Stat. Ann. § 34:8D-7 ......................................................................... 1, 3, 6, 21

**Other Authorities**

Fed. R. Civ. P. 12 ....................................................................................7, 8

Fed. R. Civ. P. 15 ..............................................................................2, 5, 7, 9

Fed. R. Civ. P. 16 .......................................................................................8

Fed. R. Civ. P. 26 .......................................................................................8

Fed. R. Civ. P. 62 .......................................................................................9

Fed. R. Civ. P. 62.1 .............................................................................1, 9, 11

N.J. Admin. Code § 12:72-2.1 (July 21, 2023), https://www.nj.gov/
   labor/assets/
   PDFs/Legal%20Notices/Notices%20of%20Proposal/NJAC_12_72
   _(tempoary_laborers)_(notice_of_proposal)_FILED_7_21_23.pdf ....................4

N.J. Admin. Code § 12:72-7.2...............................................................4, 5

N.J. Admin. Code § 12:72-7.3.................................................................4

# INTRODUCTION

This case returns to the Court's docket based on a new issue: whether the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, preempts what Plaintiffs will refer to as the "equal-benefits" provision in New Jersey's Temporary Workers' Bill of Rights ("Act"), N.J. Stat. Ann. § 34:8D-7(b). This provision mandates that staffing agencies supplying temporary workers to third-party clients shall provide to the temporary workers not "less than the . . . average cost of benefits, or the cash equivalent thereof, of employees of the third party client performing the same or substantially similar work." *Id.* Recently, an Illinois federal court enjoined on ERISA-preemption grounds operation of a similar Illinois equal-benefits provision. *See Staffing Servs. Ass'n of Ill. v. Flanagan*, No. 23-C-16203, 2024 U.S. Dist. LEXIS 42102 (N.D. Ill. Mar. 11, 2024), *appeal filed*, No. 24-1450 (7th Cir. Mar. 25, 2024).

Consistent with the Illinois decision, Plaintiffs now move for indicative relief concerning the Act's equal-benefits provision and ERISA's preemption of it. Plaintiffs seek an indicative ruling – rather than more direct relief from the Court – because currently pending in the Third Circuit is an appeal of Plaintiffs' earlier request for a preliminary injunction ("PI") that addressed the legality of the equal-benefits provision (and other parts of the Act), albeit on different grounds. Federal Rule of Civil Procedure 62.1 creates a procedure by which a district court may indicate its views on an issue in the event it lacks the authority to grant relief due to

a pending appeal, so that the appellate court then can order a limited remand for the district court to enter direct relief.

Specifically, Plaintiffs request an indicative ruling that the Court would issue a PI in Plaintiffs' favor based on ERISA preemption if the Third Circuit remanded the case to this Court or that Plaintiffs' motion raises a substantial question in the case. As a threshold matter, the issue of ERISA preemption is properly before the Court, notwithstanding Plaintiffs having not pled an ERISA-preemption claim in the original complaint. Under Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiffs have the right to amend, and have today amended, their complaint to pursue the previously unpled ERISA-preemption ground. Moreover, Plaintiffs have properly invoked the vehicle of indicative relief because it is available, and should be granted, when the underlying relief sought (here, a PI) is warranted, the indicative ruling might narrow the issues on appeal, and the indicative-ruling request does not simply rehash earlier-determined matters.

To that end, on the merits, Plaintiffs satisfy the requirements for a PI. Most important, Plaintiffs are likely to succeed on the merits of their ERISA-preemption claim, as not only does the recent Illinois decision strongly support the claim, but on-point U.S. Supreme Court precedent does as well. *See, e.g., District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125 (1992). And this Court has already determined that Plaintiffs are suffering irreparable harm from current

2

compliance with the Act, harm that has become only more evident and acute since the Court's earlier determination.

## BACKGROUND

### I.      The Equal-Benefits Provision

In its earlier opinion denying a preliminary injunction on non-ERISA grounds, the Court summarized the Act's equal-benefits provision:

> Temporary workers may not "be paid [by their staffing agency] less than the average rate of pay and *average cost of benefits, or the cash equivalent thereof,* of employees of the third party client performing the same or substantially similar work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions for the third party client at the time the temporary laborer is assigned to work at the third-party client." § 34:8D-7(b).

Op. at 5, July 26, 2023, ECF No. 34 (emphasis added) [hereinafter "Earlier PI Op."].

For staffing agencies, the section of the Act containing the equal-benefits provision itself "imposes a $5,000 penalty for each violation [of the equal-benefits provision]." *Id.* (citing § 34:8D-7(a), (c)). "Third-party clients may also be held jointly and severally liable for such violations." *Id.* (citing § 34:8D-7(d)). Another provision of the Act authorizes a private cause of action for aggrieved persons to enforce any provision of the Act, *see* § 34:8D-11(a), which is available against a staffing agency or a third-party client. *See id.*; *see also id.* § 34:8D-7(d).

In July 2023, the Labor and Workforce Development Division of Wage and Hour Compliance issued proposed regulations implementing the Act (not yet

finalized), including the equal-benefits provision.  The proposed regulations prescribe that, definitionally, the third-party client's benefits for consideration in determining equality in cost of benefits for the relevant temporary worker "means employee fringe benefits, including but not limited to, health insurance, life insurance, disability insurance, paid time off (including vacation, holidays, personal leave and sick leave in excess of what is required by law)[,] training, and pension."  N.J. Admin. Code § 12:72-2.1 (July 21, 2023), https://www.nj.gov/labor/assets/PDFs/Legal%20Notices/Notices%20of%20Proposal/NJAC_12_72_(tempoary_laborers)_(notice_of_proposal)_FILED_7_21_23.pdf.  The proposed regulations also largely mimic the statutory language in setting forth the equal-benefits requirement, *see id.* § 12:72-7.1(a), and they then outline how to calculate the average cost of benefits for "comparator employees of the third-party client," *id.* § 12:72-7.2, along with how to determine who is an appropriate comparator employee of the third-party client.  *See id.* § 12:72-7.3.

With respect to third-party client obligations concerning the equal-benefits provision, the proposed regulations state:

> At the time that the temporary help service firm contracts with the third-party client for the services of the temporary laborer, the third-party client shall provide to the temporary help service firm a listing of the hourly rate of pay and cost per hour of benefits for each employee of the third-party client who the third-party client determines would be a comparator employee.

*Id.* § 12:72-7.2(a).

## II.    The Original and First Amended Complaints

Plaintiffs New Jersey Staffing Alliance ("NJSA"), New Jersey Business and Industry Association ("NJBIA"), and American Staffing Association ("ASA") brought this action in May 2023 against relevant New Jersey regulators, state agencies, and New Jersey.  *See* Earlier PI Op. at 2.  The original complaint averred that the Act violates several provisions of the U.S. and New Jersey Constitutions, 42 U.S.C. § 1983, and the New Jersey Civil Rights Act.  *See id.* at 6-7.  The original complaint raised no claim under ERISA, made no mention of ERISA, and made no mention of any other federal statute (other than 42 U.S.C. § 1983) or the U.S. Constitution's Supremacy Clause (upon which ERISA preemption is based, *see* U.S. Const. art. VI, ¶ 2).

Contemporaneously with this Memorandum, Plaintiffs have filed their first amended complaint, pursuant to Federal Rule of Civil Procedure 15(a).  The first amended complaint is the same as the original complaint, except that it now additionally raises a claim that ERISA preempts the Act's equal-benefits provision and that the provision therefore is void under the U.S. Constitution's Supremacy Clause and should be enjoined on that basis.

## III.    The Court's Prior, and the Third Circuit's Pending, Proceedings Concerning the Act

On July 26, 2023, the Court denied a motion for a PI (as well as a request for a temporary restraining order) that Plaintiffs based on their claims proffered in the original complaint (not on ERISA).  In seeking emergency relief, Plaintiffs

contended that once the Act became effective (it now has) – "particularly the pay provision, § 34:8D-7," Earlier PI Op. at 6, which the Court defined as including the equal-benefits provision, plus the Act's requirement that staffing agencies match wages of their workers to the third-party client's permanent employees' wages, *see id.* at 5 – "the temporary staffing industry in New Jersey will be brought 'to a halt.'" *Id.* at 6. Plaintiffs substantiated their contentions of the "calamity to come" with "several sworn declarations from representatives of their members." *Id.* On the PI motion, "the Court conclude[d] that, although Plaintiffs have made the necessary showing with respect to irreparable harm, they have failed to show a likelihood of success on the merits of any of their claims, and their application for emergency injunctive relief must therefore be denied." *Id.* at 10.

Plaintiffs appealed interlocutorily, pursuant to 28 U.S.C. § 1292(a)(1), the Court's denial of the PI motion. *See New Jersey Staffing All. v. Fais*, No. 23-2419 (3d Cir.). The parties have completed briefing in the appeal, and the Third Circuit has calendared oral argument for June 4, 2024.

In the meantime, given the prospect of a Third Circuit appeal, and pursuant to a proposal of the parties, this Court postponed the time for Defendants to answer the original complaint. Specifically, the Court ordered:

1. Defendants' deadline to answer, move, or otherwise respond to Plaintiffs' Complaint is adjourned.
2. Defendants shall answer, move[, or] otherwise respond to [P]laintiffs' complaint within thirty (30) days of the disposition of any filed appeal and/or the date to file such an appeal expires.

Order for Am. Pleading Schedule at 2, Aug. 3, 2023, ECF No. 37. Since issuance

of that order, the Court considered, and denied, a stay of the Act pending appeal of

the denial of the earlier PI motion. *See* Order, Aug. 14, 2023, ECF No. 40.

Plaintiffs have now filed a new motion, this time seeking, in deference to

the pending Third Circuit appeal, indicative relief stating that Plaintiffs have met

the requirements for a PI based on the ERISA-preemption claim newly pled in the

first amended complaint.

## ARGUMENT

## I.     THE FIRST AMENDED COMPLAINT AND MOTION FOR AN INDICATIVE RULING ARE PROPERLY BEFORE THE COURT

Plaintiffs have properly presented to this Court their first amended complaint

and motion for indicative ruling. Under Fed. R. Civ. P. 15(a)(1):

> A party may amend its pleading once as a matter of course no later than:
> (A) 21 days after serving it, or (B) if the pleading is one to which a
> responsive pleading is required, 21 days after service of a responsive
> pleading or 21 days after service of a motion under Rule 12(b), (e), or
> (f), whichever is earlier.

Here, possibility (A) has passed, but (B) has not. With respect to (B), because the

original complaint filed in this case is a pleading to which a responsive pleading is

required, Plaintiffs' time to amend the complaint extends to 21 days after service

by Defendant of its answer or a Rule 12(b), (e), or (f) motion. However,

Defendant has not yet served an answer or any sort of Rule 12 motion, given that

the Court has adjourned Defendant's time for doing so. Accordingly, Plaintiffs'

time to amend the original complaint continues to run, and seemingly will continue for an extended period to come. Given that the time described in (B) has yet to expire, Plaintiffs have the right to file their first amended complaint, which now becomes the operative pleading in the case.

True, the Court, as noted, did adjourn Defendants' time to respond to the original complaint. Nonetheless, while the adjournment, in turn, had the practical effect of postponing a scheduling conference and discovery, since those events hinge on the filing of the responsive pleading, *see generally* Fed. R. Civ. P. 16(b)(2), 26(f)(1), the Court did not stay the case. Nor did Defendant ever seek a stay of the case. Furthermore, the pendency of the Third Circuit appeal, upon which this Court based its adjournment of the time for the responsive pleading, does not affect this Court's authority to proceed further on the merits. Though it is an appeal as of right, the interlocutory appeal of the Court's earlier denial of a PI on non-ERISA bases does not divest this Court of jurisdiction generally, unlike an appeal from a final order would. *See Brennan v. William Paterson College*, 492 F. App'x 258, 263 n.7 (3d Cir. 2012). In short, given Fed. R. Civ. P. 15(a)(1)(B) and the limited scope of the Court's adjournment, plus the fact that Plaintiffs' pending appeal is interlocutory, Plaintiffs have properly filed the first amended complaint, raising grounds for relief under ERISA.

Plaintiffs' motion for an indicative ruling is likewise appropriately before the Court. Federal Rule of Civil Procedure 62.1 provides:

8

> If a timely motion is made for relief that the court lacks authority to
> grant because of an appeal that has been docketed and is pending, the
> court may: (1) defer considering the motion; (2) deny the motion; or (3)
> state either that it would grant the motion if the court of appeals
> remands for that purpose or that the motion raises a substantial issue.

Fed. R. Civ. P. 62.1(a). Here, there is some ambiguity whether the Court retains

jurisdiction to issue *a new PI*, while its earlier denial of a PI remains on appeal,

despite the Court having jurisdiction to proceed to the merits.[1] Accordingly,

Plaintiffs – out of an abundance of caution – invoke the indicative-ruling

procedure, under the assumption that they cannot move outright for a new PI.

Whether a movant is entitled to an indicative ruling typically hinges on the

merits of the underlying request for relief – here, the propriety of a PI based on

---

[1] Federal Rule of Civil Procedure 62(d) seems on its face to authorize a district court to issue a new PI even while the denial of an earlier one is on appeal, but some courts – all outside this Circuit – have limited new PI relief to situations where it "preserve[s] the status quo." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. E. Air Lines, Inc.*, 847 F.2d 1014, 1018 (2d Cir. 1988); *see also Coastal Corp. v. Texas E. Corp.*, 869 F.2d 817, 820 (5th Cir. 1989). In contrast, the Third Circuit rejects that rule, instead authorizing new preliminary relief that "preserv[e] the integrity of the appeal." *Ortho Pharm. Corp. v. Amgen, Inc.*, 887 F.2d 460, 464 (3d Cir. 1989). Yet, that standard too is opaque, and courts in this Circuit have turned to the indicative-ruling procedure in Rule 62.1 as the safer option, which is the route Plaintiffs here pursue. *E.g.*, *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers' Statewide Benefit Funds*, No. CV 18-16328, 2019 U.S. Dist. 136896, at *17-18 (D.N.J. Aug. 14, 2019), *aff'd sub nom. MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386 (3d Cir. 2020). Of course, in the event the Court believes it may, under *Ortho*, issue a new PI addressing a current and different issue raised in a subsequent, amended complaint, Plaintiffs would welcome it and follow any further procedure for seeking the PI that the Court outlines. *Cf. Favia v. Indiana Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993) (allowing new injunction if "a change of circumstances . . . render[s] the continuance of the injunction in its original form inequitable").

ERISA-preemption grounds.  *Cf. Testa v. DOJ*, No. 21-18569, 2023 U.S. Dist.

LEXIS 162096, at *4-6 (D.N.J. Sept. 13, 2023).  Further, courts should use

indicative rulings to "allow for the timely resolution of motions which may further

the appeal or obviate its necessity."  *Ret. Bd. of Policemen's Annuity & Ben. Fund

v. Bank of New York Mellon*, 297 F.R.D. 218, 221 (S.D.N.Y. 2013).  On the other

hand, where the movant's request for an indicative ruling raises "the very issue on

appeal," a court should defer providing an indicative ruling, since the request in

that instance only serves to "interrupt[] the appellate process."  *Id.*; *see also

Amarin Pharms. Ireland Ltd. v. FDA*, 139 F. Supp. 3d 437, 447 (D.D.C. 2015).

Here, Plaintiffs satisfy the tenets for an indicative ruling, because – as shown

in the next section – they satisfy the elements for a PI based on ERISA preemption.

Additionally, depending on the speed with which the Third Circuit resolves the

appeal, the indicative ruling may facilitate the appeal by potentially obviating the

need for the Third Circuit to address the various non-ERISA arguments presented

on appeal for invalidating the equal-benefits provision; that is, if this Court were to

indicate it will enjoin the equal-benefits provision because of ERISA preemption,

the Third Circuit could forego addressing the equal-benefits provision altogether

on appeal.  Last, the issue raised in connection with the indicative-ruling request –

namely, ERISA preemption – is a new one, not a rehash of any issue currently

presented in the appeal.  Under these circumstances, the Court should, respectfully,

proceed to issue an indicative ruling that a PI is warranted on ERISA-preemption

grounds or, at a minimum, that Plaintiffs have raised a substantial question concerning ERISA preemption.[2]

## II. PLAINTIFFS SATISFY THE REQUIREMENTS FOR PRELIMINARY RELIEF

Preliminary relief is warranted where a movant shows:

> "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant [temporary or preliminary relief], should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."

Earlier PI Op. at 9 (alterations in original) (quoting *Reilly v. City of Harrisburg*, 858 F.3d 173, 174 (3d Cir. 2017)). With respect to a PI based on ERISA preemption, Plaintiffs satisfy all four criteria.

### A. Plaintiffs Are Likely to Succeed on the Merits of Their ERISA-Preemption Claim

Plaintiffs have a strong likelihood of succeeding on their claims that ERISA preempts the equal-benefits provision. Under ERISA's express preemption clause, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plans [governed by ERISA]," 29 U.S.C. § 1144(a), and ERISA generally governs all welfare and pension plans sponsored by private

---

[2] In the event the Court issues the indicative ruling that Plaintiffs request, Plaintiffs will promptly notify the Third Circuit as prescribed in Federal Rule of Civil Procedure 62.1(b).

employers, other than those sponsored by churches.  *See id.* §§ 1002(1),

1003(b)(2).[3]

In its case law, the Supreme Court has often described two categories of

state laws that fit ERISA's express preemption provision:

> First, ERISA pre-empts a state law if it has a "reference to" ERISA
> plans. [*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers
> Ins. Co.*, 514 U.S. 645, 656 (1995).]  To be more precise, "[w]here a
> State's law acts immediately and exclusively upon ERISA plans . . . or
> where the existence of ERISA plans is essential to the law's operation
> . . . , that 'reference' will result in pre-emption." [*Cal. Div. of Labor
> Standards Enf't v. Dillingham Constr., N.A.*, 519 U.S. 316, 325 (1997)
> ("*Dillingham*").]  Second, ERISA pre-empts a state law that has an
> impermissible "connection with" ERISA plans, meaning a state law
> that "governs . . . a central matter of plan administration" or "interferes
> with nationally uniform plan administration." [*Egelhoff v. Egelhoff*,
> 532 U.S. 141, 148 (2001).]

*Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319-20 (2016); *accord Rutledge v.*

*Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 88 (2020).

---

[3] The benefits that the equal-benefits provision mandates (by way of equivalence to
the third-party clients' benefits) include the full universe of fringe benefits
employers may offer, *see supra* p. 4, such as pension, health, life, and vacation
benefits.  The provision of these benefits by a private employer to its employees
through a program or plan meets the definition of an ERISA plan.  *See* 29 U.S.C.
§ 1002(1) (defining ERISA welfare plan as an employer-sponsored program or
plan providing "medical, surgical, or hospital care or benefits, or benefits in the
event of sickness, accident, disability, death or unemployment, or vacation
benefits, apprenticeship or other training programs, or day care centers, scholarship
funds, or prepaid legal services"); *see also id.* § 1002(2) (defining ERISA pension
plan as an employer-sponsored program or plan providing "retirement income" or
"deferral of income" to employees).

As noted below, the Act's equal-benefits provision fails the "connection with" prong of the preemption test, based on persuasive, recent precedent from an Illinois federal court; it likewise, and independently, makes a "reference to" ERISA plans, based on instructive Supreme Court precedent.  Plaintiffs address the "connection with" basis first, given the proximity – in subject, analysis, and time – of the Illinois decision.

**1.    The Equal-Benefits Provision Has a "Connection with" ERISA Plans**

In *Staffing Services Association of Illinois v. Flanagan*, No. 23-C-16203, 2024 U.S. Dist. LEXIS 42102 (N.D. Ill. Mar. 11, 2024), the district court relied on the "connection with" prong and held that ERISA preempted an Illinois law very similar to the Act's equal-benefits provision.  Under similar reasoning, ERISA preempts the Act's equal-benefits requirement, and other considerations unaddressed by *Flanagan* make the Act even *more* susceptible to ERISA preemption than the Illinois law.

**a.    Under the Reasoning of *Flanagan*, the Act's Equal-Benefits Provision Has a "Connection with" ERISA Plans**

In *Flanagan*, the district court addressed an Illinois statutory provision – known as "Section 42" of the Illinois Day and Temporary Labor Services Act – "requir[ing] agencies to pay temporary employees who work at a particular site for more than ninety days within a year either 'equivalent benefits' as the lowest paid, comparable, directly-hired employee at the third-party client or 'the hourly cash

13

equivalent of the actual cost benefits.'" *Id.* at *4 (quoting 820 Ill. Comp. Stat. 175/42). "It also require[d] third-party clients to provide agencies with 'all necessary information related to job duties, pay, and benefits of directly hired employees' so that agencies can comply." *Id.* at *5 (quoting 820 Ill. Comp. Stat. 175/42). Focusing exclusively on the Illinois law's effect on staffing agencies, the court held that the Illinois plaintiffs, who included ASA, a local staffing trade association, and three local staffing agencies, had "made a strong showing that [the Illinois equal-benefits provision] has a 'connection with' ERISA plans" sufficient to satisfy the likelihood-of-success-on-the-merits requirement for preliminary relief (*id.* at *13); it then also found the other criteria for preliminary relief were satisfied, so that the court issued a preliminary injunction based on ERISA-preemption grounds. *See id.* at *25-26.

The court found a likelihood of success on the merits based on ERISA for, in effect, three reasons. *First*, the court noted that under the "connection with" prong, a state law is preempted if it "dictates the choices facing ERISA plans." *Id.* at *7 (quoting *Egelhoff*, 532 U.S. at 150). As the court saw it: "Agencies must determine the value of many different benefit plans and then determine whether to provide the value in cash or the benefits themselves by modifying their plans or adopting new ones." *Id.* "Such a direct and inevitable link to ERISA plans warrants preemption." *Id.*

14

*Second,* the court found the Illinois law failed the standard that state law, under the "connection with" prong, may not be "'disruptive of uniform plan administration.'" *Id.* (quoting *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 193 (4th Cir. 2007)). Illinois asserted that the "cash alternative" steered the Illinois statute clear of preemption, under the theory that "it allows [staffing] agencies a way of complying with [Section 42] without touching its ERISA plans." *Id.* Disagreeing, the court said: "Even with the choice between providing benefits or cash," the Illinois equal-benefits requirement "denies [staffing] agencies the ability to administer [their] ERISA plans uniformly." *Id.* at *8.

> For employees who work in Illinois, agencies have to collect and analyze benefit plan information from their client for a comparable employee, compare those plans to their existing plans, and determine whether to modify or supplement their plans, calculate and pay the cost of any benefits they do not presently provide, or both. Agencies also have to track how long each employee works at each client site. Agencies would not have to undertake any of these activities for their employees from other States. . . . "Such balkanization of benefit administration is exactly the sort of outcome ERISA was designed to prevent."

*Id.* at *8-9 (quoting *Merits Constr. All. v. City of Quincy*, 759 F.3d 122, 130 (1st Cir. 2014), and citing *Fielder*, 475 F.3d at 193).

*Third*, the court held that the Illinois statute had a "connection with" ERISA plans because, whether the staffing agency complied with the state law by providing benefits to the covered temporary workers or the cash equivalent, the benefits or payments would impermissibly constitute state-imposed ERISA-plan

benefits.  Either way, "making the Section 42 choice necessarily requires an ongoing administrative scheme involving individual judgments," which is the test for determining if the circumstances trigger an ERISA plan, even based on cash payments.  *Id.* at *9.  The Illinois law "requires agencies to make judgment calls about employees' eligibility and level of benefits on an individualized and ongoing basis."  *Id.* at *10.  The "appraisal is complex and particularized."  *Id.*  "In short, by mandating 'benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation,' Section 42 raises the very concern ERISA preemption seeks to address."  *Id.* at *11 (quoting *Fort Halifax Co., Inc. v. Coyne*, 482 U.S. 1, 11 (1987)).

On the same three fronts, the Act's equal-benefits provision has a "connection with" ERISA plans.  First of all, the Act's provision no less than Illinois's "dictates choices" for ERISA plans (*Egelhoff*, 532 U.S. at 150):  staffing agencies must evaluate the value of the benefits they provide, compare them with the third-party client's cost of benefits, and – if the latter is greater – decide "whether to provide the value in cash or the benefits themselves by modifying their plans or adopting new ones."  *Flanagan*, 2024 U.S. Dist. LEXIS 42102, at *7.

Next, the Act's equal-benefits provision hampers uniform plan administration, because staffing agencies with employees in more than one state must pay the level of benefits prescribed by Act or the cash equivalent for their New Jersey workers, while offering different benefits to their workers in other

states. "[P]lan administrators [of multistate staffing agencies] would have to 'maintain a familiarity with the laws of [potentially] all 50 states so that they can update their plans as necessary to satisfy the . . . requirements of other, similar statutes' and monitor the interpretation of those statutes by state courts." *Id.* at *8 (quoting *Egelhoff*, 532 U.S. at 151). "Such "'tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction" [was] exactly the burden ERISA seeks to eliminate."" *Id.* (quoting *Egelhoff*, 532 U.S. at 151, quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)).

And finally, as with Illinois's Section 42, the Act's equal-benefits provision has a "connection with" ERISA plans because it "effectively require[s them] to establish a particular ERISA-governed benefit." *Fielder*, 475 F.3d at 192 (citing *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985)). Whether a New Jersey staffing agency expands its benefits program for its workers to comply with the Act's requirements, or pays the cash equivalent, both require a detailed administrative scheme to accomplish. In brief, "whether agencies choose to provide 'equivalent benefits' or pay cash, they must analyze their own and third parties' ERISA plans and engage in ongoing, particularized, discretionary analysis to comply with [the Act]." *Flanagan*, 2024 U.S. Dist. LEXIS 42102, at *13. The Third Circuit and district courts in this Circuit have readily held that cash payments to employees constitute ERISA benefits, when there are specific eligibility considerations associated with the cash payment, when there may be repeat

17

payments, and when each beneficiary's payment requires particularized analysis. *E.g., Pane v. RCA Corp.*, 667 F. Supp. 168, 170-71 (D.N.J. 1987), *aff'd*, 868 F.2d 631 (3d Cir. 1989) (holding that one-time, lump-sum cash severance payment to employees constituted ERISA plan); *accord Girardot v. Chemours Co.*, 2017 U.S. Dist. LEXIS 46103, at *9-11 (D. Del. Mar. 29, 2017); *Zgrablich v. Cardone Indus.*, 2016 U.S. Dist. LEXIS 13338, at *16-17 (E.D. Pa. Feb. 23, 2016): *cf. Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285 (3d Cir. 2014) (involving supplemental health coverage).[4]

### b. The Act's Equal-Benefits Provision Has Greater "Connection with" ERISA Plans than Its Analogue in *Flanagan*

ERISA preempts the Act's equal-benefits regime based on the "connection with" test for an additional reason not undergirding the *Flanagan* ruling:  because the Act's equal-benefits provision intolerably burdens *third-party clients'* ERISA-

---

[4] *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992), further supports a finding that the Act impermissibly compels the establishment of or alterations to ERISA plans, even with respect to the cash option.  While the Third Circuit in *Angst* determined no ERISA plan to exist, it emphasized that the key ingredient for ERISA status (missing in the case before it) is "the creation of a new administrative scheme" to administer cash payments, as opposed simply to tagging onto "an existing administrative scheme." *Id.* at 1539.  Here, the Act – much as in *Pane* (cited in the text above) – sets forth its own criteria for determining when and if a particular worker should receive any or additional benefits, as opposed to piggybacking mechanically off of any benefits formula or administrative apparatus already existing for the staffing agency. *See Angst*, 969 F.2d at 1539 ("*Pane* involved a plan which, unlike the . . . Mack plans, required the creation of an administrative apparatus that would analyze each employees' situation in light of particular criteria").

plan administration, not just the staffing agencies'. The Act reaches third-party clients with respect to ERISA benefits because, pursuant to it, they must provide information about their benefit plans to staffing agencies, so that the staffing agency can perform eligibility determinations for its workers (*i.e.*, determine if the temporary worker is entitled to greater benefits than already being received). *See supra* pp. 4–5. The Act also expressly creates joint and several liability for third-party clients for a staffing agency's non-compliance with the Act. *See supra* p. 3.[5]

In *Flanagan*, the court was prevented from considering the effect of the Illinois law on third-party clients, because no third-party client or general business trade association sued as a plaintiff. The plaintiffs there, "[t]herefore, [did] not have standing to challenge that part of Section 42." *Flanagan*, 2024 U.S. Dist. LEXIS 42102, at *5. Unlike in *Flanagan*, Plaintiffs here *do* have standing to raise ERISA preemption arguments with respect to the aspects of the Act's equal-benefits provision that require reporting on benefit plans by third-party clients to staffing agencies and the joint and several liability provision. NJBIA is a trade

---

[5] The proposed regulations overtly create a requirement that third-party clients provide information about benefits to staffing agencies. *See supra* pp. 4–5. Though the Act itself does not expressly do so, the requirement is implicit in the Act. The Act establishes joint and several liability for third-party clients for a staffing agency's violation of the equal-benefits provisions, and, absent full reporting by the third-party client to the staffing agency (plus then additional monitoring and potential intervention with the staffing agency aimed at the staffing agency's compliance), there is no way the third-party client can ensure staffing-agency adherence to the Act's terms in order for the third-party client to avoid liability.

association of businesses, including those who utilize staffing agencies' services
and who, therefore, are subject to the Act's requirements aimed at third-party
clients. *See* Suppl. Decl. of Michele Siekerka ¶ 3 (Ex. A to this Mem.).
Importantly, the Court has already sustained Plaintiffs' standing to challenge the
Act's equal-benefits provision, in the face of different legal challenges. *See* Earlier
PI Op. at 10 n.4; *see also id.* at 22 (considering challenge to § 34:8D-7(b)).

No less than the aspects of the equal-benefits provision centered on staffing
agencies, ERISA preempts the parts oriented toward third-party clients.  The
Supreme Court has established, squarely, that a state law has an impermissible
"connection with" ERISA plans if it "govern[s] a central matter of plan
administration." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016).  In
this respect, ERISA "seeks to make benefits promised by an employer more secure
by mandating certain oversight systems and other standard procedures," including
uniform *federal* "reporting and disclosure" requirements. *Id.* at 320-21, 322.  In
light of the federal reporting requirements, *Gobeille* held that ERISA preempted
(under the "connection with" standard) a state law "compel[ling] plans to report
detailed information about claims and plan members" to the state, in addition to
ERISA's federal reporting and disclosure obligations. *Id.* at 323.

For the same reason, ERISA preempts the Act's requirement that third-party
clients report to staffing agencies the details of ERISA-plan benefits for their
permanent workers, so that the staffing agencies can accurately determine benefits

20

payable to temporary workers under the Act. "Differing, or even parallel, regulations from multiple jurisdictions could create wasteful administrative costs," and "[p]re-emption is necessary to prevent the States from imposing novel, inconsistent, and burdensome reporting requirements on plans." *Id.*

Similarly, the Act's joint and several liability requirement for third-party clients has a "connection with" ERISA plans. It creates a monitoring requirement associated with *another* entity's ERISA plan (namely, staffing agencies'), at pain of the imposition of costly liability. That is, if a staffing agency fails properly to provide ERISA benefits to its workers utilized by the third-party client, the third-party client can be held liable. *See supra* p. 3. Accordingly, in addition to having responsibility for their own ERISA plans, third-party clients and their ERISA plans' administrators will have to "master" the Act's requirements for third-party clients and "contend with litigation," both of which "undermine the congressional goal of 'minimizing the administrative and financial burdens' on plan administrators – burdens ultimately borne by the beneficiaries." *Egelhoff*, 532 U.S. at 149-50 (quoting *Ingersoll-Rand*, 498 U.S. at 142). In addition, under the "connection with" standard, "ERISA also preempts state laws that provide 'alternative enforcement mechanisms'" to those authorized in ERISA's remedies section, 29 U.S.C. § 1132(a). *Flanagan*, 2024 U.S. Dist. LEXIS 42102, at *6 (quoting *Travelers*, 514 U.S. at 658). Here, the Act creates liability for third-party clients with respect to another entity's infractions concerning the other entity's

21

provision of ERISA benefits, a remedy nowhere authorized or contemplated in ERISA. *See generally* 29 U.S.C. § 1132(a) (ERISA's enforcement provision).

### 2. The Equal-Benefits Provision "References" ERISA Plans

Independent of the "connection with" problem infecting the Act's equal-benefits provision, the provision makes a "reference to" ERISA plans, thereby also failing the other prong of the ERISA-preemption test (though failure on just one prong is sufficient). Specifically, under *District of Columbia v. Greater Washington Board of Trade*, 506 U.S. 125 (1992) ("*Greater Washington*"), the Act's equal-benefits provisions references ERISA plans and therefore is void.

*Greater Washington* involved a D.C. ordinance requiring "employers who provide health insurance for their employees to provide *equivalent health insurance coverage* for injured employees eligible for workers' compensation benefits." 506 U.S. at 126-27 (emphasis added). The Court held that the ordinance was preempted by ERISA because it contained an impermissible "reference to" ERISA plans, as its coverage requirement for workers-compensation plans, which actually are exempt from ERISA, *see* 29 U.S.C. § 1003(b)(3), was measured by reference to the benefits provided under employers' ERISA plans.

The Supreme Court began its analysis by noting that "ERISA pre-empts any state law that refers to or has a connection with covered benefit plans . . . even if the law is not specifically designed to affect such plans, or the effect is only indirect . . . and even if the law is consistent with ERISA's substantive

22

requirements." *Greater Washington*, 506 U.S. at 129-30 (internal quotation marks and citation omitted).  The D.C. ordinance at issue in *Greater Washington* was preempted by ERISA because:  (1) the required coverage was "measured by reference to 'the existing health insurance coverage' provided by the employer and 'shall be at the same benefit level'"; (2) the employee's "existing health insurance coverage" was "a welfare benefit plan under ERISA . . . because it involves a fund or program maintained by an employer for the purpose of providing health benefits for the employee 'through the purchase of insurance or otherwise'"; (3) "[s]uch employer-sponsored health insurance programs are subject to ERISA regulation"; and (4) "any state law imposing requirements by reference to such covered programs must yield to ERISA." *Id.* at 130-31 (quoting D.C. law and 29 U.S.C. § 1002(1)).  And the Court said it made "no difference" that the ordinance's requirements were part of D.C.'s regulation of, and therefore also "relate[d] to," ERISA-exempt workers' compensation plans. *Id.* at 131.  According to the Court, an exemption from ERISA coverage does not "limit the pre-emptive sweep of [ERISA's preemption provision] once it is determined that the law in question relates to [an ERISA-covered] plan." *Id.*

In all pertinent parts, the Act's equal-benefits provision is at least as problematic as the D.C. ordinance's requirement in *Greater Washington*.  Just as the D.C. law required equivalence in benefits between two pools of workers – namely, the employer's employees on workers' compensation and those regularly

employed – its New Jersey counterpart mandates equivalence in benefits between a staffing agency's temporary workers and permanent employees of third-party clients. Moreover, in both instances, the coverage providing the benchmark, or reference point, is ERISA coverage: just as, under the D.C. law, the employer's coverage provided to its regular employees (which was to be the benchmark for employees on workers' compensation) automatically fit the definition of an ERISA welfare plan under 29 U.S.C. § 1002(1), so does the coverage supplied to permanent workers of the staffing agency's client companies (which is the Act's benchmark for the staffing agency's temporary workers).

If anything, the Act creates greater preemption concerns than the D.C. ordinance in *Greater Washington*. Whereas the reference to ERISA plans in *Greater Washington* was in furtherance of providing equivalent benefits in a non-ERISA setting (*i.e.*, pursuant to ERISA-exempt plans for employees on workers' compensation), the Act's reference to ERISA plans is for the purpose of providing *other ERISA benefits*. That is, the staffing agencies subject to regulation under the Act must provide benefits to their employees (the temporary workers then utilized by third-party clients) or the cash equivalent, consistent with the benefits provided by the client agencies to permanent workers. The programs of benefits provided by the staffing agencies themselves constitute ERISA plans, just as the coverage the third-party clients provide to their permanent workers (*i.e.*, the reference) constitutes ERISA coverage, since an ERISA plan exists whenever a private

24

employer supplies welfare or pension benefits to its employees. *See* 29 U.S.C.

§ 1002(1), (2). Even a staffing agency's payment of a fixed cash equivalent to the

third-party client's benefits would qualify as an ERISA-plan payment. *See supra*

pp. 16–17.

Hence, while it is enough under *Greater Washington* for an impermissible

"reference" that a state law uses ERISA benefits as a benchmark in a non-ERISA

context, the Act goes one step further and references ERISA benefits on both ends

of the equation – *i.e.*, by making ERISA benefits the reference point for providing

other ERISA benefits. Under the circumstances, even more than the local law in

*Greater Washington*, the Act's equal-benefits provision "specifically refers to

welfare benefit plans regulated by ERISA and on that basis alone is pre-empted."

506 U.S. at 130.

Examining "the objectives of the ERISA statute" and "the nature of the

effect of the state law on ERISA plans" confirms that ERISA preempts the Act's

equal-benefits provision. *Dillingham*, 519 U.S. at 325. An obvious consequence

of the Act is to pressure third-party clients of staffing agencies to lower the level of

benefits they provide to their permanent workers, in order to limit the costs they

might incur in hiring temporary workers. Similar friction with ERISA's objectives

tainted the D.C. law at issue in *Greater Washington*:

> [The D.C. statute] could have a serious impact on the administration
> and content of the ERISA-covered plan. The fact that the benefits to
> be provided to an employee receiving workers' compensation will be

25

equivalent to the benefit levels provided while the employee is fully
employed means that every time an employer considers changing the
benefits under its ERISA-covered plan, it would have to consider the
effect that such a change would have on its unique obligations to its
District employees receiving workers' compensation. In light of the
additional financial burden associated with an increase in ERISA health
benefits, an employer might choose to forego such an increase
altogether.

*Greater Wash. Bd. of Trade v. District of Columbia*, 948 F.2d 1317, 1325 (D.C.

Cir. 1991), *aff'd*, 506 U.S. 125 (1992). ERISA – a statute animated by Congress's

desire to "induc[e] employers *to offer* benefits," *Conkright v. Frommert*, 559 U.S.

506, 517 (2010) (internal quotation marks and citation omitted) (emphasis added),

not to reduce or terminate them – cannot countenance state laws with the effect of

D.C.'s in *Greater Washington* or the Act here.

**B.    Plaintiffs Are Irreparably Harmed by the Act's Equal-Benefits
       Provision**

Plaintiffs likewise satisfy the second requirement for a PI, because the Act's

equal-benefits provision causes them irreparable harm insofar as the provision

continues in effect. In its earlier order rejecting a PI, the Court concluded that

Plaintiffs "have made the necessary irreparable harm showing" in connection with

the Act's various provisions challenged in this lawsuit, including the equal-benefits

provision (though not on ERISA grounds). Earlier PI Op. at 10. That conclusion

follows even more so from the circumstances ensuing since the Court's earlier

ruling.

26

In the earlier order, the Court determined that Plaintiffs' members' economic injury constituted irreparable harm because "'in instances where the injured parties cannot recover monetary damages after the fact,'" "'economic harm is considered irreparable.'" *Id.* at 11 (quoting *ITServe All., Inc. v. Scalia*, No. 20-14604, 2020 WL 7074391, at *9 (D.N.J. Dec. 3, 2020)). The Court noted that Plaintiffs would have difficulty obtaining damages for past economic harm from some of the Defendants due to their immunity under the Eleventh Amendment and the remaining Defendants because of the latter will invoke qualified immunity. *See id.* at 12-13. The Court added that even harm compensable later can become irreparable "'where the potential economic loss is so great as to threaten the existence of the movant's business.'" *Id.* at 12 (quoting *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011)).

Here, based on "sworn declarations," *id.* at 14, the Court found Plaintiffs "ha[d] adequately shown that their members are likely to face economic losses that could threaten the existence of the members' business," sufficing for "the necessary showing of irreparable harm to justify . . . preliminary injunctive relief." *Id.* at 15. The Court also said Plaintiffs otherwise satisfied the irreparable harm requirement "because those [economic] losses are likely unrecoverable from Defendants because of their sovereign and qualified immunities." *Id.*

The situation since the Court's earlier ruling has not improved for Plaintiffs' members, and, therefore, the Court's earlier findings of irreparable harm should

27

endure.  In fact, the case for irreparable harm – even based on the equal-benefits provision alone – has only strengthened since the Court's earlier ruling.  The prognostications evinced in the earlier sworn declarations have begun to come to fruition, as the new set of sworn declarations accompanying Plaintiffs' current motion evinces.

By way of example, the supplemental declarations further establish:

- Plaintiffs' members' businesses have experienced marked drops in revenues over the past year due to loss of clients and resulting competitive pressures to offer services at lower rates.  Members report losses at a scale that threatens the continued viability of their businesses. *See* Suppl. Decl. of Edward H. Damm ¶ 3 (Ex. B to this Mem.); Suppl. Decl. of Christopher Moyes ¶ 4 (Ex. C to this Mem.); Suppl. Decl. of Polly McDonald ¶ 3 (Ex. D to this Mem.); Suppl. Decl. of Juan Carlos Diaz ¶ 3 (Ex. E to this Mem.).

- In addition to losses incurred due to clients' reticence to engage temporary staffing agencies in New Jersey, member businesses have experienced markedly increased costs in their attempts to comply with the equal-benefits provision, expending great time and resources developing benefits plans to meet the demands of the equal-benefits provision.  *See* Suppl. Decl. of Gerald M. Cerza ¶ 3 (Ex. F to this Mem.).

- Third-party clients, too, have experienced increased costs related to the administrative requirements of the equal-benefits provision, which, in combination with the risk of joint and several liability imposed for violations, have driven such clients to reassess reliance on temporary staffing agencies.  Suppl. Decl. of David Hayes ¶ 3 (Ex. G to this Mem.).

- The increased costs and loss of business experienced by Plaintiffs' members have forced many such members to make difficult business decisions, including reducing their staff, closing offices or branches, and considering leaving the State of New Jersey.  *See* Suppl. Decl. of Polly McDonald ¶ 4; Suppl. Decl. of Gerald M. Cerza ¶ 4; Suppl. Decl. of Juan Carlos Diaz ¶ 4.

The experiences testified to in the declarations are corroborated by an internal report commissioned by NJSA at the end of 2023 (*see* Ex. H-1 to this Mem.), which found that the New Jersey "employment services" sector experienced significant declines in employment in 2023 compared to the overall New Jersey labor market. *See* Suppl. Decl. of Denise Downing ¶ 8 (Ex. H to this Mem.), Apr. 28, 2024.[6]

Accordingly, because Plaintiffs' members' businesses continue to be severely threatened by the Act, particularly its equal-benefits provision, Plaintiffs

---

[6] Three additional declarations further supporting these various points appear at Exhibits I, J, and K to this Memorandum.

currently surpass the irreparable-harm threshold. Their members' viability is sufficiently threatened to alone constitute irreparable harm. Further, in any event, Plaintiffs have shown economic losses and continued losses to come, and these are no more likely compensable from Defendants through a final order assessing damages (due to the potential bars of the Eleventh Amendment and qualified immunity) than were losses at the time of the Court's earlier PI ruling. *Accord Flanagan*, 2024 U.S. Dist. LEXIS 42102, at *24 ("With the costs of complying, potential penalties for not complying, business losses incurred thus far, and the inability to recoup losses, Plaintiffs have established more than a mere possibility of irreparable harm.").

## C.   A PI Would Not Harm the Other Parties

No "potential harm to non-moving parties," namely, Defendants, would accompany granting Plaintiffs a PI. Earlier PI Op. at 29. Instead, Defendants would be relieved of a regulatory obligation for which they otherwise would be responsible. With a PI in place, Defendants' enforcement of the equal-benefits provision would halt. In that sense, ironically, a PI would be a help to Defendants, as they have no experience in enforcing provisions of this sort and are ill-equipped to do so without significant training. If there is substantial chance that the Court will invalidate permanently the equal-benefits provision on ERISA preemption grounds, a PI assists Defendants by saving them the time and expense of ramping up to enforce a provision that ultimately will be a nullity.

To be sure, Defendants assumedly will try to assert that the persons who are the aim of the equal-benefits provision – *i.e.*, temporary workers – would be affected by a PI. But they are not parties to the litigation, and the effect on them implicates the public interest, not Defendants' interests, which Plaintiffs address next. *See Flanagan*, 2024 U.S. Dist. LEXIS 42102, at *25.

## D.    The Public Interest Favors Issuance of a PI

The public interest favors the Court issuing a PI to enjoin on ERISA-preemption grounds the equal-benefits provision. As the district court held in *Flanagan*, a PI follows from "the public interest represented by the Supremacy Clause and Congress' decision to ensure the uniformity of law related to ERISA plans." 2024 U.S. Dist. LEXIS 42102, at *26; *accord Am. Trucking Ass'n v. City of Los Angeles*, 559 F.3d 1046, 1059-60 (9th Cir. 2009). And while Defendants might assert "that granting the injunction harms both its and the public's interests" in that purportedly the Act's equal-benefits provision "protect[s] temporary workers" by increasing fringe benefits for them, *id.* at *25, that assertion – even assumed to be credible – must be balanced against "the potential departure of [staffing] agencies from [New Jersey]" and the "accompanying loss of job opportunities for the hundreds of thousands of temporary workers they employ." *Id.*

31

## **CONCLUSION**

The Court should grant Plaintiffs' motion for an indicative ruling, stating that it would preliminarily enjoin – based on ERISA preemption – operation of the Act's equal-benefits provision upon remand from the Third Circuit, or that Plaintiffs' motion raises a substantial issue.

May 21, 2024                          Respectfully submitted,

                                              /s/ Steven B. Harz
                                      Steven B. Harz, Esq. I.D. #: 006921977
David L. Menzel, Esq. I.D. #: 003571973
Rubin M. Sinins, Esq. I.D. #: 046701994
JAVERBAUM WURGAFT HICKS KAHN
WIKSTROM & SININS, P.C.
505 Morris Avenue, Suite 200
Springfield, NJ 07081
Tel #: (973) 379-4200
Fax #: (973) 379-7872
sharz@lawjw.com
dmenzel@lawjw.com
rsinins@lawjw.com

Anthony F. Shelley (*Pro Hac Vice*
      Admission Motion Forthcoming)
Joanne Roskey (*Pro Hac Vice* Admission
      Motion Forthcoming)
MILLER & CHEVALIER CHARTERED
900 Sixteenth St. NW
Black Lives Matter Plaza
Washington, DC 20006
Tel #: (202) 626-5800
Fax #: (202) 626-5801
ashelley@milchev.com
jroskey@milchev.com

*Attorneys for Plaintiffs New Jersey Staffing
Alliance, New Jersey Business and Industry
Association, and American Staffing
Association*