**JAVERBAUM WURGAFT HICKS**
**KAHN WIKSTROM & SININS, P.C.**
Steven B. Harz, Esq. I.D. #: 006921977
David L. Menzel, Esq. I.D. #: 003571973
Rubin M. Sinins, Esq. I.D. #: 046701994
505 Morris Avenue, Suite 200
Springfield, NJ 07081
Tel #: (973) 379-4200
Direct Line #: (973) 248-4522
Fax #: (973) 379-7872
sharz@lawjw.com

Anthony F. Shelley (*Pro Hac Vice* Admission Motion Pending)
Joanne Roskey (*Pro Hac Vice* Admission Motion Pending)
**MILLER & CHEVALIER CHARTERED**
900 Sixteenth St. NW
Black Lives Matter Plaza
Washington, DC 20006
Tel #: (202) 626-5800
Fax #: (202) 626-5801
ashelley@milchev.com

*Attorneys for Plaintiffs New Jersey Staffing Alliance, New Jersey Business and Industry Association, and American Staffing Association*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY STAFFING ALLIANCE, *et al.*,<br><br>       Plaintiffs,<br><br>v.<br><br>CARI FAIS, *Acting Director of the New Jersey Division of Consumer Affairs in the Department of Law and Public Safety, et al.,*<br><br>       Defendants. | No. 1:23-cv-02494-CPO-MJS<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER TO SHOW CAUSE CONCERNING PRELIMINARY INJUNCTION ON ERISA-PREEMPTION GROUNDS** |

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ...................................................................................1

BACKGROUND .....................................................................................2

    A.    The Equal-Benefits Provision and Defendants'
        Implementation and Enforcement of It ................................2

    B.    The Original and First Amended Complaints ......................5

    C.    The Court's Prior, and the Third Circuit's Pending,
        Proceedings Concerning the Act .........................................6

ARGUMENT ..........................................................................................8

I.      THE COURT HAS JURISDICTION TO CONSIDER A PI
       REQUEST ON ERISA-PREEMPTION GROUNDS ...................8

II.     PLAINTIFFS SATISFY THE REQUIREMENTS FOR
       PRELIMINARY RELIEF ...........................................................11

    A.    Plaintiffs Are Likely to Succeed on the Merits of Their
        ERISA-Preemption Claim....................................................12

        1.    The Equal-Benefits Provision Has a "Connection
            with" ERISA Plans....................................................13

            a.    Under the Reasoning of *Flanagan*, the Act's
                Equal-Benefits Provision Has a "Connection
                with" ERISA Plans .........................................14

            b.    The Act's Equal-Benefits Provision Has
                Greater "Connection with" ERISA Plans
                than Its Analogue in *Flanagan* ......................19

            2.    The Equal-Benefits Provision "References"
            ERISA Plans .............................................................23

B.   Plaintiffs Are Irreparably Harmed by the Act's Equal-Benefits Provision ...............................................................27

C.   A PI Would Not Harm the Other Parties ............................................32

D.   The Public Interest Favors Issuance of a PI ......................................33

CONCLUSION ....................................................................................36

CERTIFICATE OF SERVICE ...........................................................*Post*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Trucking Ass'n v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009) ............................................................................33

*Angst v. Mack Trucks, Inc.*,
    969 F.2d 1530 (3d Cir. 1992) ............................................................................19

*Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*,
    249 U.S. 134 (1919).............................................................................................34

*Atl. Coast Line R.R. Co. v. Florida*,
    295 U.S. 301 (1938).............................................................................................34

*Brennan v. William Paterson College*,
    492 F. App'x 258 (3d Cir. 2012)...........................................................................8

*Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A.*,
    519 U.S. 316 (1997)......................................................................................13, 26

*Conkright v. Frommert*,
    559 U.S. 506 (2010).............................................................................................27

*District of Columbia v. Greater Wash. Bd. of Trade*,
    506 U.S. 125 (1992)........................................................................2, 23, 24, 26

*Egelhoff v. Egelhoff*,
    532 U.S. 141 (2001)........................................................................13, 15, 17, 22

*Favia v. Indiana Univ. of Pa.*,
    7 F.3d 332 (3d Cir. 1993) ....................................................................................9

*Fort Halifax Co., Inc. v. Coyne*,
    482 U.S. 1 (1987)................................................................................................16

*Girardot v. Chemours Co.*,
    2017 U.S. Dist. LEXIS 46103 (D. Del. Mar. 29, 2017)....................................18

*Gobeille v. Liberty Mut. Ins. Co.*,
    577 U.S. 312 (2016)......................................................................13, 21, 22

*Greater Wash. Bd. of Trade v. District of Columbia*,
 948 F.2d 1317 (D.C. Cir. 1991), *aff'd*, 506 U.S. 125 (1992) ..............................27

*Ingersoll-Rand Co. v. McClendon*,
 498 U.S. 133 (1990)..................................................................................17, 22

*ITServe All., Inc. v. Scalia*,
 No. 20-14604, 2020 WL 7074391 (D.N.J. Dec. 3, 2020) ...................................28

*Menkes v. Prudential Ins. Co. of Am.*,
 762 F.3d 285 (3d Cir. 2014) ...........................................................................19

*Merits Constr. All. v. City of Quincy*,
 759 F.3d 122 (1st Cir. 2014).............................................................................16

*Metro. Life Ins. Co. v. Massachusetts*,
 471 U.S. 724 (1985)........................................................................................18

*Minard Run Oil Co. v. U.S. Forest Serv.*,
 670 F.3d 236 (3d Cir. 2011) ............................................................................28

*MZM Constr. Co. v. N.J. Bldg. Laborers' Statewide Benefit Funds*,
 No. 18-cv-16328, 2019 U.S. Dist. LEXIS 136896 (D.N.J. Aug. 14,
 2019), *aff'd*, 974 F.3d 386 (3d Cir. 2020) ...........................................................9

*N.J. Sports Prods., Inc. v. Don King Prods., Inc.*,
 15 F. Supp. 2d 546 (D.N.J. 1998).......................................................................8

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995) ...........................................................................12, 22

*Ortho Pharm. Corp. v. Amgen, Inc.*,
 887 F.2d 460 (3d Cir. 1989) ...............................................................2, 8, 9, 10

*Pane v. RCA Corp.*,
 667 F. Supp. 168 (D.N.J. 1987), *aff'd*, 868 F.2d 631 (3d Cir. 1989)...........18, 19

*Reilly v. City of Harrisburg*,
 858 F.3d 173 (3d Cir. 2017) ............................................................................11

*Retail Indus. Leaders Ass'n v. Fielder*,
 475 F.3d 180 (4th Cir. 2007) .................................................................15, 16, 18

iv

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
  592 U.S. 80 (2020) ..................................................................................13

*Staffing Servs. Ass'n of Ill. v. Flanagan*,
  No. 23-C-16203, 2024 U.S. Dist. LEXIS 42102
  (N.D. Ill. Mar. 11, 2024) ..................................................................*passim*

*Zgrablich v. Cardone Indus.*,
  2016 U.S. Dist. LEXIS 13338 (E.D. Pa. Feb. 23, 2016) ....................................18

## Constitution and Statutes

U.S. Const. art. VI ..................................................................................5

28 U.S.C. § 1292 ....................................................................................7

Employee Retirement Income Security Act of 1974,
  29 U.S.C. §§ 1001 *et seq.* ........................................................................1
  29 U.S.C. § 1002 ..............................................................12, 24, 25, 26
  29 U.S.C. § 1003 ........................................................................12, 23
  29 U.S.C. § 1132 ........................................................................22, 23
  29 U.S.C. § 1144 ..............................................................................12

42 U.S.C. § 1983 ....................................................................................5

820 Ill. Comp. Stat. 175/42 ..................................................................14

N.J. Stat. Ann. § 34:8D-7 ..............................................................1, 3, 6, 21

## Other Authorities

Fed. R. Civ. P. 12 ....................................................................................6

Fed. R. Civ. P. 15 ..................................................................................5, 6

Fed. R. Civ. P. 62 ..............................................................................8, 10

Fed. R. Civ. P. 62.1 ..................................................................................7

Fed. R. Civ. P. 65 ....................................................................................9

N.J. Admin. Code § 12:72-2.1 (July 21, 2023), https://www.nj.gov/
labor/assets/PDFs/Legal%20Notices/Notices%20of%20Proposal/
NJAC_12_72_(tempoary_laborers)_(notice_of_proposal)_
FILED_7_21_23.pdf ............................................................4

N.J. Admin. Code § 12:72-7.2 ....................................................4

N.J. Admin. Code § 12:72-7.3 ....................................................4

11A Charles A. Wright et al., *Federal Practice and Procedure*,
Civil (2d ed. 1995) ............................................................9

**INTRODUCTION**

This case returns to the Court's docket based on a new issue:  whether the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, preempts what Plaintiffs will refer to as the "equal-benefits" provision in New Jersey's Temporary Workers' Bill of Rights ("Act"), N.J. Stat. Ann. § 34:8D-7(b).  This provision mandates that staffing agencies supplying temporary workers to third-party clients shall provide to the temporary workers not "less than the . . . average cost of benefits, or the cash equivalent thereof, of employees of the third party client performing the same or substantially similar work." *Id.*  Recently, an Illinois federal court enjoined on ERISA-preemption grounds operation of a similar Illinois equal-benefits provision.  *See Staffing Servs. Ass'n of Ill. v. Flanagan*, No. 23-C-16203, 2024 U.S. Dist. LEXIS 42102 (N.D. Ill. Mar. 11, 2024), *appeal filed*, No. 24-1450 (7th Cir. Mar. 25, 2024).  Consistent with that decision, Plaintiffs now seek preliminary relief concerning the Act's equal-benefits provision on the basis that ERISA preempts it.

The Court should issue a preliminary injunction ("PI").  As a threshold matter, the parties agree that the Court has jurisdiction to consider a new PI request, notwithstanding the Court's earlier denial of a PI motion concerning non-ERISA claims that is currently on appeal.  Since the earlier denial, Plaintiffs have amended their complaint to raise the ERISA claim, which Plaintiffs previously had

not pled; the effects of the Act on regulated parties are now evident; and Defendants have engaged in enforcement under the Act.  At a minimum, Third Circuit precedent holds that a pending appeal of a PI does not divest a district court of jurisdiction to consider a new PI where, as here, there are changed circumstances.  *See Ortho Pharm. Corp. v. Amgen, Inc.*, 887 F.2d 460, 463 (3d Cir. 1989).

Additionally, Plaintiffs satisfy the requirements for preliminary relief.  Most important, Plaintiffs are likely to succeed on the merits of their ERISA-preemption claim, as not only does the recent Illinois precedent strongly support the claim, but on-point U.S. Supreme Court precedent does as well.  *See, e.g.*, *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125 (1992).  And this Court earlier determined that Plaintiffs would suffer irreparable harm from compliance with the Act, harm that now is fully evident with, in the meantime, no stay of enforcement of the Act.  On these bases, the Court should forthwith enjoin operation of the Act's equal-benefits provision.

## **BACKGROUND**

### A.    **The Equal-Benefits Provision and Defendants' Implementation and Enforcement of It**

In its earlier opinion denying a preliminary injunction on non-ERISA grounds, the Court summarized the Act's equal-benefits provision:

> Temporary workers may not "be paid [by their staffing agency] less than the average rate of pay and *average cost of benefits, or the cash equivalent thereof*, of employees of the third party client performing the same or substantially similar work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions for the third party client at the time the temporary laborer is assigned to work at the third-party client." § 34:8D-7(b).

Op. at 5, July 26, 2023, ECF No. 34 (emphasis added) [hereinafter "Earlier PI Op."].

For staffing agencies, the section of the Act containing the equal-benefits provision itself "imposes a $5,000 penalty for each violation [of the equal-benefits provision]." *Id.* (citing § 34:8D-7(a), (c)). "Third-party clients may also be held jointly and severally liable for such violations." *Id.* (citing § 34:8D-7(d)). Another provision of the Act authorizes a private cause of action for aggrieved persons to enforce any provision of the Act, *see* § 34:8D-11(a), which is available against a staffing agency or a third-party client. *See id.*; *see also id.* § 34:8D-7(d).

In July 2023, the Labor and Workforce Development Division of Wage and Hour Compliance issued proposed regulations implementing the Act (not yet finalized), including the equal-benefits provision. The proposed regulations prescribe that, definitionally, the third-party client's benefits for consideration in determining equality in cost of benefits for the relevant temporary worker "means employee fringe benefits, including but not limited to, health insurance, life insurance, disability insurance, paid time off (including vacation, holidays,

3

personal leave and sick leave in excess of what is required by law)[,] training, and pension." N.J. Admin. Code § 12:72-2.1 (July 21, 2023), https://www.nj.gov/labor/assets/PDFs/Legal%20Notices/Notices%20of%20Proposal/NJAC_12_72_(tempoary_laborers)_(notice_of_proposal)_FILED_7_21_23.pdf. The proposed regulations also largely mimic the statutory language in setting forth the equal-benefits requirement, *see id.* § 12:72-7.1(a), and they then outline how to calculate the average cost of benefits for "comparator employees of the third-party client," *id.* § 12:72-7.2, along with how to determine who is an appropriate comparator employee of the third-party client. *See id.* § 12:72-7.3.

With respect to third-party client obligations concerning the equal-benefits provision, the proposed regulations state:

> At the time that the temporary help service firm contracts with the third-party client for the services of the temporary laborer, the third-party client shall provide to the temporary help service firm a listing of the hourly rate of pay and cost per hour of benefits for each employee of the third-party client who the third-party client determines would be a comparator employee.

*Id.* § 12:72-7.2(a).

Though the regulations are not final, Defendants have engaged in enforcement activity under the Act, having, for instance, during audits queried Plaintiffs' members concerning their compliance with Defendants' view of the Act's provisions. *See* Suppl. Decl. of Denise Downing ¶ 9, Apr. 28, 2024 (Ex. H to this Mem.). To that end, this Court, in its earlier PI-denial ruling, noted that

Defendants intended to enforce imminently the Act's provisions as construed under the proposed regulations. Earlier PI Op. at 15 n.10. Additionally, Plaintiffs' members have suffered threats of litigation from interested parties, over compliance with the Act. *See* Suppl. Decl. of Juan Carlos Diaz ¶ 3, Apr. 22, 2024 (Ex. E to this Mem.).

### B.    The Original and First Amended Complaints

Plaintiffs New Jersey Staffing Alliance ("NJSA"), New Jersey Business and Industry Association ("NJBIA"), and American Staffing Association ("ASA") brought this action in May 2023 against relevant New Jersey regulators, state agencies, and New Jersey. *See* Earlier PI Op. at 2. The original complaint averred that the Act violates several provisions of the U.S. and New Jersey Constitutions, 42 U.S.C. § 1983, and the New Jersey Civil Rights Act. *See id.* at 6-7. The original complaint raised no claim under ERISA, made no mention of ERISA, and made no mention of any other federal statute (other than 42 U.S.C. § 1983) or the U.S. Constitution's Supremacy Clause (upon which ERISA preemption is based, *see* U.S. Const. art. VI, ¶ 2).

On May 21, 2024, Plaintiffs filed their first amended complaint, pursuant to Federal Rule of Civil Procedure 15(a). *See* First Am. Compl., May 21, 2024, ECF No. 43. The first amended complaint is the same as the original complaint, except that it additionally raises a claim that ERISA preempts the Act's equal-benefits

provision and that the provision therefore is void under the U.S. Constitution's

Supremacy Clause and should be enjoined on that basis.[1]

### C.   The Court's Prior, and the Third Circuit's Pending, Proceedings Concerning the Act

On July 26, 2023, the Court denied a motion for a PI (as well as a request for

a temporary restraining order) that Plaintiffs based on their claims proffered in the

original complaint (not on ERISA).  In seeking emergency relief, Plaintiffs

contended that once the Act became effective (it now has) – "particularly the pay

provision, § 34:8D-7," Earlier PI Op. at 6, which the Court defined as including the

equal-benefits provision, plus the Act's requirement that staffing agencies match

wages of their workers to the third-party client's permanent employees' wages, *see*

*id.* at 5 – "the temporary staffing industry in New Jersey will be brought 'to a

halt.'"  *Id.* at 6.  Plaintiffs substantiated their contentions of the "calamity to come"

with "several sworn declarations from representatives of their members."  *Id.*  On

---

[1] The first amended complaint is properly deemed the operative pleading, because
Federal Rule of Civil Procedure 15(a)(1)(B) authorized Plaintiffs to amend their
original complaint as of right, given that Defendants had not yet answered the
original complaint or otherwise filed a motion under Federal Rule of Civil
Procedure 12(b), (e), or (f).  Though the Court had adjourned the time for
Defendant to file a responsive pleading with respect to the original complaint, *see*
Order for Am. Pleading Schedule at 2, Aug. 3, 2023, ECF No. 37, the Court did
not stay the case or otherwise limit Plaintiffs' ability to proceed in the case.  Based
on comments Defendants made at the proceedings the Court held on May 23, 2024,
*see generally infra* p. 7, Plaintiffs understand that Defendants do not contest the
propriety of the filing of the first amended complaint.

the PI motion, "the Court conclude[d] that, although Plaintiffs have made the

necessary showing with respect to irreparable harm, they have failed to show a

likelihood of success on the merits of any of their claims, and their application for

emergency injunctive relief must therefore be denied." *Id.* at 10.

Plaintiffs appealed interlocutorily, pursuant to 28 U.S.C. § 1292(a)(1), the

Court's denial of the PI motion.  *See New Jersey Staffing All. v. Fais*, No. 23-2419

(3d Cir.).  The parties have completed briefing in the appeal, and the Third Circuit

held oral argument on June 4, 2024.

On May 21, 2024, contemporaneously with the filing of their first amended

complaint, Plaintiffs filed a request for an indicative ruling pursuant to Federal

Rule of Civil Procedure 62.1 that the Court would issue a PI on ERISA-preemption

grounds if the Third Circuit remanded the case for that purpose.  *See* Pls.' Mot. for

Indicative Ruling, May 21, 2024, ECF No. 44.  However, the Court on May 23,

2024, held a conference with the parties in which it signaled it believed it had

jurisdiction to entertain a new PI motion (irrespective of the appeal), *see* Minutes

of Proceedings, May 23, 2024, ECF No. 50, and it then ordered the parties "to meet

and confer, after which Plaintiffs will notify the Court by close of business on

Wednesday, May 29, 2024 as to how they intend to proceed."  Text Order, May 24,

2024, ECF No. 49.  The parties did then meet and confer, with Plaintiffs filing a letter

on May 29, 2024 indicating:  (1) Defendants take the position that the Court has

jurisdiction to entertain a new PI motion; (2) Plaintiffs were withdrawing their motion for an indicative ruling; and (3) Plaintiffs would proceed to request a PI on ERISA-preemption bases.  *See* Letter from S. Harz, May 24, 2024, ECF No. 51.

## **ARGUMENT**

## I.   **THE COURT HAS JURISDICTION TO CONSIDER A PI REQUEST ON ERISA-PREEMPTION GROUNDS**

The Court has jurisdiction to entertain Plaintiffs' motion for an order to show cause concerning a new PI on ERISA-preemption grounds.  More specifically, the interlocutory appeal of the Court's earlier denial of a PI on non-ERISA bases does not divest this Court of jurisdiction generally, unlike an appeal from a final order would.  *See Brennan v. William Paterson College*, 492 F. App'x 258, 263 n.7 (3d Cir. 2012).  Indeed, Federal Rule of Civil Procedure 62 expressly provides for subsequent PIs after the denial of an initial one, even while the latter is on appeal.  *See* Fed. R. Civ. P. 62(d) ("While an appeal is pending from an interlocutory order . . . that . . . refuses . . . an injunction, the court may suspend, modify, restore, or grant an injunction . . . .").

Consistent with Rule 62(d), the Third Circuit has held that subsequent PI motions – even "a motion to modify an injunction," not just for issuance of a new PI – "can, at least in some circumstances, be heard during the pendency of an appeal over which the court of appeals will retain jurisdiction."  *Ortho Pharm. Corp. v. Amgen, Inc.*, 887 F.2d 460, 463 (3d Cir. 1989); *see N.J. Sports Prods.*,

*Inc. v. Don King Prods., Inc.*, 15 F. Supp. 2d 546, 550 (D.N.J. 1998) ("Under Fed. R. Civ. P. 65, when a Court issues an 'order involving injunctive relief. . . prior to the entry of a final judgment[,] . . . an appeal from the grant or denial of [the] preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending.'") (quoting 11A Charles A. Wright et al., *Federal Practice and Procedure*, Civil § 2962, at 410, 438 (2d ed. 1995)) (alterations in original); *MZM Constr. Co. v. N.J. Bldg. Laborers' Statewide Benefit Funds*, No. 18-cv-16328, 2019 U.S. Dist. LEXIS 136896, at *18 (D.N.J. Aug. 14, 2019), *aff'd*, 974 F.3d 386 (3d Cir. 2020) (same).

At a minimum, in this Circuit, a district court has jurisdiction to determine a new PI motion during the pendency of an appeal concerning earlier preliminary relief where there are "changed circumstances." *MZM Constr. Co.*, 2019 U.S. Dist. LEXIS 136896, at *19; *accord Favia v. Indiana Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993) (allowing new injunction if "a change of circumstances . . . render[s] the continuance of the injunction in its original form inequitable") (alterations in original).  What might be prohibited is simply "relitigat[ing] the original issue" in the district court "absent some change in circumstances." *Ortho*, 887 F.2d at 463 (internal quotation marks and citation omitted).

Here, the circumstances and issues have changed since the Court's denial of Plaintiffs' first request for a PI.  For one thing, Plaintiffs have filed the first

9

amended complaint, which raises an ERISA-preemption claim previously not present in the case.  The Court, accordingly, never addressed ERISA preemption in the context of the first PI motion, which is the only claim at issue for the new PI request.  In addition, since the time of the first PI motion, the Act has gone into effect and Defendants have begun enforcement of the Act's provisions, including the equal-benefits provision.  *See* Suppl. Decl. of Denise Downing ¶ 9 (Ex. H to this Mem.).  As a result, unlike at the time of the Court's consideration of the first PI motion, the *actual* effects of the Act – irreparable, as noted later – and experience under the Act can be documented, which enters into the PI calculus.  In that regard, Plaintiffs have provided for the Court numerous sworn Declarations describing the Act's dramatic, negative consequences since it became effective and enforceable.  *See supra* pp. 29-31; *see generally* Exs. A through K to this Mem.

For these reasons, the parties agree that the Court has jurisdiction to determine Plaintiffs' new motion for a PI based on ERISA preemption.  *See supra* pp. 7-8 (noting Defendants' position, after parties meeting and conferring).  To be sure, the Court still has an obligation to determine its own jurisdiction.  Because of Rule 62(d), *Ortho* and its progeny, and the changed landscape since the Court's

earlier denial of a PI, the Court should determine that it has authority to address

Plaintiffs' new PI request, despite the pending appeal of the earlier PI denial.[2]

## II.   PLAINTIFFS SATISFY THE REQUIREMENTS FOR PRELIMINARY RELIEF

A PI is warranted where a movant shows:

"(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . .  [In addition,] the district court, in considering whether to grant [temporary or preliminary relief], should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."

Earlier PI Op. at 9 (alterations in original) (quoting *Reilly v. City of Harrisburg*,

858 F.3d 173, 174 (3d Cir. 2017)).  With respect to a PI based on ERISA

preemption, Plaintiffs satisfy all four criteria.

---

[2] Plaintiffs previously moved for an indicative ruling rather than outright for a PI based on ERISA preemption.  *See supra* p. 7.  But as noted in that filing, Plaintiffs did so out of an abundance of caution and because of disuniformity in the national case law on district-court jurisdiction pending an appeal of a PI, while also welcoming the Court's exercise of jurisdiction in the event the Court believed it had jurisdiction.  Pls.' Mot. for Indicative Ruling at 9 n.1.  In light of the Court suggesting in its May 23, 2024 conference with the parties that it believed it had jurisdiction (under Third Circuit case law) and providing Plaintiffs the opportunity to reassess how to proceed, and given Defendants' position (since stated) that the Court has jurisdiction, Plaintiffs have withdrawn their motion for an indicative ruling and now request a PI based on ERISA-preemption grounds.

## A.     Plaintiffs Are Likely to Succeed on the Merits of Their ERISA-Preemption Claim

Plaintiffs have a strong likelihood of succeeding on their claim that ERISA preempts the equal-benefits provision.  Under ERISA's express preemption clause, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [governed by ERISA]," 29 U.S.C. § 1144(a), and ERISA generally governs all welfare and pension plans sponsored by private employers, other than those sponsored by churches.  *See id.* §§ 1002(1), 1003(b)(2).[3]

In its case law, the Supreme Court has often described two categories of state laws that fit ERISA's express preemption provision:

> First, ERISA pre-empts a state law if it has a "reference to" ERISA plans.  [*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995).]  To be more precise, "[w]here a State's law acts immediately and exclusively upon ERISA plans . . . or

---

[3] The benefits that the equal-benefits provision mandates (by way of equivalence to the third-party clients' benefits) include the full universe of fringe benefits employers may offer, *see supra* pp. 3-4, such as pension, health, life, and vacation benefits.  The provision of these benefits by a private employer to its employees through a program or plan meets the definition of an ERISA plan.  *See* 29 U.S.C. § 1002(1) (defining ERISA welfare plan as an employer-sponsored program or plan providing, "through the purchase of insurance or otherwise," "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services"); *see also id.* § 1002(2) (defining ERISA pension plan as an employer-sponsored program or plan providing "retirement income" or "deferral of income" to employees).

where the existence of ERISA plans is essential to the law's operation . . . , that 'reference' will result in pre-emption."  [*Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A.*, 519 U.S. 316, 325 (1997) ("*Dillingham*").]  Second, ERISA pre-empts a state law that has an impermissible "connection with" ERISA plans, meaning a state law that "governs . . . a central matter of plan administration" or "interferes with nationally uniform plan administration."  [*Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001).]

*Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319-20 (2016); *accord Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 88 (2020).

As noted below, the Act's equal-benefits provision fails the "connection with" prong of the preemption test, based on persuasive, recent precedent from an Illinois federal court; it likewise, and independently, makes a "reference to" ERISA plans, based on instructive Supreme Court precedent.  Plaintiffs address the "connection with" basis first, given the proximity – in subject, analysis, and time – of the Illinois decision.

### 1.    The Equal-Benefits Provision Has a "Connection with" ERISA Plans

In *Staffing Services Association of Illinois v. Flanagan*, No. 23-C-16203, 2024 U.S. Dist. LEXIS 42102 (N.D. Ill. Mar. 11, 2024), *appeal filed*, No. 24-1450 (7th Cir. Mar. 25, 2024), the district court relied on the "connection with" prong and held that ERISA preempted an Illinois law very similar to the Act's equal-benefits provision.  Under similar reasoning, ERISA preempts the Act's equal-

benefits requirement, and other considerations unaddressed by *Flanagan* make the

Act even *more* susceptible to ERISA preemption than the Illinois law.

> **a.** **Under the Reasoning of *Flanagan*, the Act's Equal-Benefits Provision Has a "Connection with" ERISA Plans**

In *Flanagan*, the district court addressed an Illinois statutory provision –

known as "Section 42" of the Illinois Day and Temporary Labor Services Act –

"requir[ing] agencies to pay temporary employees who work at a particular site for

more than ninety days within a year either 'equivalent benefits' as the lowest paid,

comparable, directly-hired employee at the third-party client or 'the hourly cash

equivalent of the actual cost benefits.'"  *Id.* at *4 (quoting 820 Ill. Comp. Stat.

175/42).  "It also require[d] third-party clients to provide agencies with 'all

necessary information related to job duties, pay, and benefits of directly hired

employees' so that agencies can comply."  *Id.* at *5 (quoting 820 Ill. Comp. Stat.

175/42).  Focusing exclusively on the Illinois law's effect on staffing agencies, the

court held that the Illinois plaintiffs, who included ASA, a local staffing trade

association, and three local staffing agencies, had "made a strong showing that [the

Illinois equal-benefits provision] has a 'connection with' ERISA plans" sufficient

to satisfy the likelihood-of-success-on-the-merits requirement for preliminary relief

(*id.* at *13); it then also found the other criteria for preliminary relief were

satisfied, so that the court issued a preliminary injunction based on ERISA-preemption grounds.  *See id.* at *25-26.

The court found a likelihood of success on the merits based on ERISA preemption for, in effect, three reasons.  *First*, the court noted that under the "connection with" prong, a state law is preempted if it "dictates the choices facing ERISA plans."  *Id.* at *7 (quoting *Egelhoff*, 532 U.S. at 150).  As the court saw it: "Agencies must determine the value of many different benefit plans and then determine whether to provide the value in cash or the benefits themselves by modifying their plans or adopting new ones."  *Id.*  "Such a direct and inevitable link to ERISA plans warrants preemption."  *Id.*

*Second,* the court found the Illinois law failed the standard that state law, under the "connection with" prong, may not be "'disruptive of uniform plan administration.'"  *Id.* (quoting *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 193 (4th Cir. 2007)).  Illinois asserted that the "cash alternative" steered the Illinois statute clear of preemption, under the theory that "it allows [staffing] agencies a way of complying with [Section 42] without touching its ERISA plans."  *Id.*  Disagreeing, the court said:  "Even with the choice between providing benefits or cash," the Illinois equal-benefits requirement "denies [staffing] agencies the ability to administer [their] ERISA plans uniformly."  *Id.* at *8.

> For  employees  who  work  in  Illinois,  agencies  have  to  collect  and
> analyze  benefit  plan  information  from  their  client  for  a  comparable

employee, compare those plans to their existing plans, and determine whether to modify or supplement their plans, calculate and pay the cost of any benefits they do not presently provide, or both. Agencies also have to track how long each employee works at each client site. Agencies would not have to undertake any of these activities for their employees from other States. . . . "Such balkanization of benefit administration is exactly the sort of outcome ERISA was designed to prevent."

*Id.* at *8-9 (quoting *Merits Constr. All. v. City of Quincy*, 759 F.3d 122, 130 (1st Cir. 2014), and citing *Fielder*, 475 F.3d at 193).

*Third*, the court held that the Illinois statute had a "connection with" ERISA plans because, whether the staffing agency complied with the state law by providing benefits to the covered temporary workers or the cash equivalent, the benefits or payments would impermissibly constitute state-imposed ERISA-plan benefits. Either way, "making the Section 42 choice necessarily requires an ongoing administrative scheme involving individual judgments," which is the test for determining if the circumstances trigger an ERISA plan, even based on cash payments. *Id.* at *9. The Illinois law "requires agencies to make judgment calls about employees' eligibility and level of benefits on an individualized and ongoing basis." *Id.* at *10. The "appraisal is complex and particularized." *Id.* "In short, by mandating 'benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation,' Section 42 raises the very concern ERISA preemption seeks to address." *Id.* at *11 (quoting *Fort Halifax Co., Inc. v. Coyne*, 482 U.S. 1, 11 (1987)).

16

On the same three fronts, the Act's equal-benefits provision has a "connection with" ERISA plans.  First of all, the Act's provision no less than Illinois's "dictates choices" for ERISA plans (*Egelhoff*, 532 U.S. at 150):  staffing agencies must evaluate the value of the benefits they provide, compare them with the third-party client's cost of benefits, and – if the latter is greater – decide "whether to provide the value in cash or the benefits themselves by modifying their plans or adopting new ones."  *Flanagan*, 2024 U.S. Dist. LEXIS 42102, at *7.

Next, the Act's equal-benefits provision hampers uniform plan administration, because staffing agencies with employees in more than one state must pay the level of benefits prescribed by Act or the cash equivalent for their New Jersey workers, while offering different benefits to their workers in other states.  "[P]lan administrators [of multistate staffing agencies] would have to 'maintain a familiarity with the laws of [potentially] all 50 states so that they can update their plans as necessary to satisfy the . . . requirements of other, similar statutes' and monitor the interpretation of those statutes by state courts."  *Id.* at *8 (quoting *Egelhoff*, 532 U.S. at 151).  "Such '"tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction" [was] exactly the burden ERISA seeks to eliminate.'"  *Id.* (quoting *Egelhoff*, 532 U.S. at 151, quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)).

And finally, as with Illinois's Section 42, the Act's equal-benefits provision has a "connection with" ERISA plans because it "effectively require[s them] to establish a particular ERISA-governed benefit." *Fielder*, 475 F.3d at 192 (citing *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985)). Whether a New Jersey staffing agency expands its benefits program for its workers to comply with the Act's requirements, or pays the cash equivalent, both require a detailed administrative scheme to accomplish. In brief, "whether agencies choose to provide 'equivalent benefits' or pay cash, they must analyze their own and third parties' ERISA plans and engage in ongoing, particularized, discretionary analysis to comply with [the Act]." *Flanagan*, 2024 U.S. Dist. LEXIS 42102, at *13. The Third Circuit and district courts in this Circuit have readily held that cash payments to employees constitute ERISA benefits, when there are specific eligibility considerations associated with the cash payment, when there may be repeat payments, and when each beneficiary's payment requires particularized analysis. *E.g.*, *Pane v. RCA Corp.*, 667 F. Supp. 168, 170-71 (D.N.J. 1987), *aff'd*, 868 F.2d 631 (3d Cir. 1989) (holding that one-time, lump-sum cash severance payment to employees constituted ERISA plan); *accord Girardot v. Chemours Co.*, 2017 U.S. Dist. LEXIS 46103, at *9-11 (D. Del. Mar. 29, 2017); *Zgrablich v. Cardone Indus.*, 2016 U.S. Dist. LEXIS 13338, at *16-17 (E.D. Pa. Feb. 23, 2016): *cf.*

*Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285 (3d Cir. 2014) (involving

supplemental health coverage).[4]

> **b.    The Act's Equal-Benefits Provision Has Greater "Connection with" ERISA Plans than Its Analogue in *Flanagan***

ERISA preempts the Act's equal-benefits regime based on the "connection

with" test for an additional reason not undergirding the *Flanagan* ruling:  because

the Act's equal-benefits provision intolerably burdens *third-party clients'* ERISA-

plan administration, not just the staffing agencies'.  The Act reaches third-party

clients with respect to ERISA benefits because, pursuant to it, they must provide

information about their benefit plans to staffing agencies, so that the staffing

agency can perform eligibility determinations for its workers (*i.e.*, determine if the

temporary worker is entitled to greater benefits than already being received).  *See*

---

[4] *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992), further supports a finding that the Act impermissibly compels the establishment of or alterations to ERISA plans, even with respect to the cash option.  While the Third Circuit in *Angst* determined no ERISA plan to exist, it emphasized that the key ingredient for ERISA status (missing in the case before it) is "the creation of a new administrative scheme" to administer cash payments, as opposed simply to tagging onto "an existing administrative scheme."  *Id.* at 1539.  Here, the Act – much as in *Pane* (cited in the text above) – sets forth its own criteria for determining when and if a particular worker should receive any or additional benefits, as opposed to piggybacking mechanically off of any benefits formula or administrative apparatus already existing for the staffing agency.  *See Angst*, 969 F.2d at 1539 ("*Pane* involved a plan which, unlike the . . . Mack plans, required the creation of an administrative apparatus that would analyze each employees' situation in light of particular criteria").

*supra* p. 4.  The Act also expressly creates joint and several liability for third-party clients for a staffing agency's non-compliance with the Act.  *See supra* p. 3.[5]

In *Flanagan*, the court was prevented from considering the effect of the Illinois law on third-party clients, because no third-party client or general business trade association sued as a plaintiff.  The plaintiffs there, "[t]herefore, [did] not have standing to challenge that part of Section 42."  *Flanagan*, 2024 U.S. Dist. LEXIS 42102, at *5.  Unlike in *Flanagan*, Plaintiffs here *do* have standing to raise ERISA preemption arguments with respect to the aspects of the Act's equal-benefits provision that require reporting on benefit plans by third-party clients to staffing agencies and the joint and several liability provision.  NJBIA is a trade association of businesses, including those who utilize staffing agencies' services and who, therefore, are subject to the Act's requirements aimed at third-party clients.  *See* Suppl. Decl. of Michele Siekerka ¶ 3 (Ex. A to this Mem.).  Importantly, the Court has already sustained Plaintiffs' standing to challenge the

---

[5] The proposed regulations overtly create a requirement that third-party clients provide information about benefits to staffing agencies.  *See supra* p. 4.  Though the Act itself does not expressly do so, the requirement is implicit in the Act.  The Act establishes joint and several liability for third-party clients for a staffing agency's violation of the equal-benefits provisions, and, absent full reporting by the third-party client to the staffing agency (plus then additional monitoring and potential intervention with the staffing agency aimed at the staffing agency's compliance), there is no way the third-party client can ensure staffing-agency adherence to the Act's terms in order for the third-party client to avoid liability.

Act's equal-benefits provision, in the face of different legal challenges. *See* Earlier PI Op. at 10 n.4; *see also id.* at 22 (considering challenge to § 34:8D-7(b)).

No less than the aspects of the equal-benefits provision centered on staffing agencies, ERISA preempts the parts oriented toward third-party clients. The Supreme Court has established, squarely, that a state law has an impermissible "connection with" ERISA plans if it "govern[s] a central matter of plan administration." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016). On that score, ERISA "seeks to make benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures," including uniform *federal* "reporting and disclosure" requirements. *Id.* at 320-21, 322. In light of the federal reporting requirements, *Gobeille* held that ERISA preempted (under the "connection with" standard) a state law "compel[ling] plans to report detailed information about claims and plan members" to the state, in addition to ERISA's federal reporting and disclosure obligations. *Id.* at 323.

For the same reason, ERISA preempts the Act's requirement that third-party clients report to staffing agencies the details of ERISA-plan benefits for their permanent workers, so that the staffing agencies can accurately determine benefits payable to temporary workers under the Act. "Differing, or even parallel, regulations from multiple jurisdictions could create wasteful administrative costs,"

21

and "[p]re-emption is necessary to prevent the States from imposing novel, inconsistent, and burdensome reporting requirements on plans." *Id.*

Similarly, the Act's joint and several liability requirement for third-party clients has a "connection with" ERISA plans. It creates a monitoring requirement associated with *another* entity's ERISA plan (namely, staffing agencies'), at pain of the imposition of costly liability. That is, if a staffing agency fails properly to provide ERISA benefits to its workers utilized by the third-party client, the third-party client can be held liable. *See supra* p. 3. Accordingly, in addition to having responsibility for their own ERISA plans, third-party clients and their ERISA plans' administrators will have to "master" the Act's requirements for third-party clients and "contend with litigation," both of which "undermine the congressional goal of 'minimizing the administrative and financial burdens' on plan administrators – burdens ultimately borne by the beneficiaries." *Egelhoff*, 532 U.S. at 149-50 (quoting *Ingersoll-Rand*, 498 U.S. at 142). In addition, under the "connection with" standard, "ERISA also preempts state laws that provide 'alternative enforcement mechanisms'" to those authorized in ERISA's remedies section, 29 U.S.C. § 1132(a). *Flanagan*, 2024 U.S. Dist. LEXIS 42102, at *6 (quoting *Travelers*, 514 U.S. at 658). Here, the Act creates liability for third-party clients with respect to another entity's infractions concerning the other entity's

provision of ERISA benefits, a remedy nowhere authorized or contemplated in ERISA. *See generally* 29 U.S.C. § 1132(a) (ERISA's enforcement provision).

### 2.    The Equal-Benefits Provision "References" ERISA Plans

Independent of the "connection with" problem infecting the Act's equal-benefits provision, the provision makes a "reference to" ERISA plans, thereby also failing the other prong of the ERISA-preemption test (though failure on just one prong is sufficient). Specifically, under *District of Columbia v. Greater Washington Board of Trade*, 506 U.S. 125 (1992) ("*Greater Washington*"), the Act's equal-benefits provision references ERISA plans and therefore is void.

*Greater Washington* involved a D.C. ordinance requiring "employers who provide health insurance for their employees to provide *equivalent health insurance coverage* for injured employees eligible for workers' compensation benefits." 506 U.S. at 126-27 (emphasis added). The Court held that the ordinance was preempted by ERISA because it contained an impermissible "reference to" ERISA plans, as its coverage requirement for workers-compensation plans, which actually are exempt from ERISA, *see* 29 U.S.C. § 1003(b)(3), was measured by reference to the benefits provided under employers' ERISA plans.

The Supreme Court began its analysis by noting that "ERISA pre-empts any state law that refers to or has a connection with covered benefit plans . . . even if the law is not specifically designed to affect such plans, or the effect is only

indirect . . . and even if the law is consistent with ERISA's substantive requirements." *Greater Washington*, 506 U.S. at 129-30 (internal quotation marks and citation omitted).  The D.C. ordinance at issue in *Greater Washington* was preempted by ERISA because:  (1) the required coverage was "measured by reference to 'the existing health insurance coverage' provided by the employer and 'shall be at the same benefit level'"; (2) the employee's "existing health insurance coverage" was "a welfare benefit plan under ERISA . . . because it involves a fund or program maintained by an employer for the purpose of providing health benefits for the employee 'through the purchase of insurance or otherwise'"; (3) "[s]uch employer-sponsored health insurance programs are subject to ERISA regulation"; and (4) "any state law imposing requirements by reference to such covered programs must yield to ERISA."  *Id.* at 130-31 (quoting D.C. law and 29 U.S.C. § 1002(1)).  And the Court said it made "no difference" that the ordinance's requirements were part of D.C.'s regulation of, and therefore also "relate[d] to," ERISA-exempt workers' compensation plans.  *Id.* at 131.  According to the Court, an exemption from ERISA coverage does not "limit the pre-emptive sweep of [ERISA's preemption provision] once it is determined that the law in question relates to [an ERISA-covered] plan."  *Id*.

In all pertinent parts, the Act's equal-benefits provision is at least as problematic as the D.C. ordinance's requirement in *Greater Washington*.  Just as

the D.C. law required equivalence in benefits between two pools of workers –
namely, the employer's employees on workers' compensation and those regularly
employed – its New Jersey counterpart mandates equivalence in benefits between a
staffing agency's temporary workers and permanent employees of third-party
clients.  Moreover, in both instances, the coverage providing the benchmark, or
reference point, is ERISA coverage:  just as, under the D.C. law, the employer's
coverage provided to its regular employees (which was to be the benchmark for
employees on workers' compensation) automatically fit the definition of an ERISA
welfare plan under 29 U.S.C. § 1002(1), so does the coverage supplied to
permanent workers of the staffing agency's client companies (which is the Act's
benchmark for the staffing agency's temporary workers).

   If anything, the Act creates greater preemption concerns than the D.C.
ordinance in *Greater Washington*.  Whereas the reference to ERISA plans in
*Greater Washington* was in furtherance of providing equivalent benefits in a non-
ERISA setting (*i.e.*, pursuant to ERISA-exempt plans for employees on workers'
compensation), the Act's reference to ERISA plans is for the purpose of providing
*other ERISA benefits*.  That is, the staffing agencies subject to regulation under the
Act must provide benefits to their employees (the temporary workers then utilized
by third-party clients) or the cash equivalent, consistent with the benefits provided
by the client agencies to permanent workers.  The programs of benefits provided

by the staffing agencies themselves constitute ERISA plans, just as the coverage the third-party clients provide to their permanent workers (*i.e.*, the reference) constitutes ERISA coverage, since an ERISA plan exists whenever a private employer supplies welfare or pension benefits to its employees. *See* 29 U.S.C. § 1002(1), (2). Even a staffing agency's payment of a fixed cash equivalent to the third-party client's benefits would qualify as an ERISA-plan payment. *See supra* pp. 18-19.

Hence, while it is enough under *Greater Washington* for an impermissible "reference" that a state law uses ERISA benefits as a benchmark in a non-ERISA context, the Act goes one step further and references ERISA benefits on both ends of the equation – *i.e.*, by making ERISA benefits the reference point for providing other ERISA benefits. Under the circumstances, even more than the local law in *Greater Washington*, the Act's equal-benefits provision "specifically refers to welfare benefit plans regulated by ERISA and on that basis alone is pre-empted." 506 U.S. at 130.

Examining "the objectives of the ERISA statute" and "the nature of the effect of the state law on ERISA plans" confirms that ERISA preempts the Act's equal-benefits provision. *Dillingham*, 519 U.S. at 325. An obvious consequence of the Act is to pressure third-party clients of staffing agencies to lower the level of benefits they provide to their permanent workers, in order to limit the costs they

26

might incur in hiring temporary workers.  Similar friction with ERISA's objectives

tainted the D.C. law at issue in *Greater Washington*:

> [The D.C. statute] could have a serious impact on the administration
> and content of the ERISA-covered plan.  The fact that the benefits to
> be provided to an employee receiving workers' compensation will be
> equivalent to the benefit levels provided while the employee is fully
> employed means that every time an employer considers changing the
> benefits under its ERISA-covered plan, it would have to consider the
> effect that such a change would have on its unique obligations to its
> District employees receiving workers' compensation.  In light of the
> additional financial burden associated with an increase in ERISA health
> benefits, an employer might choose to forego such an increase
> altogether.

*Greater Wash. Bd. of Trade v. District of Columbia*, 948 F.2d 1317, 1325 (D.C.

Cir. 1991), *aff'd*, 506 U.S. 125 (1992).  ERISA – a statute animated by Congress's

desire to "induc[e] employers *to offer* benefits," *Conkright v. Frommert*, 559 U.S.

506, 517 (2010) (internal quotation marks and citation omitted) (emphasis added),

not to reduce or terminate them – cannot countenance state laws with the effect of

D.C.'s in *Greater Washington* or the Act here.

**B.    Plaintiffs Are Irreparably Harmed by the Act's Equal-Benefits
Provision**

Plaintiffs likewise satisfy the second requirement for a PI, because the Act's

equal-benefits provision causes them irreparable harm insofar as the provision

continues in effect.  In its earlier order rejecting a PI, the Court concluded that

Plaintiffs "have made the necessary irreparable harm showing" in connection with

the Act's various provisions challenged in this lawsuit, including the equal-benefits

provision (though not on ERISA grounds).  Earlier PI Op. at 10.  That conclusion

follows even more so from the circumstances ensuing since the Court's earlier

ruling.

In the earlier order, the Court determined that Plaintiffs' members' economic

injury constituted irreparable harm because "'in instances where the injured parties

cannot recover monetary damages after the fact,'" "'economic harm is considered

irreparable.'"  *Id.* at 11 (quoting *ITServe All., Inc. v. Scalia*, No. 20-14604, 2020

WL 7074391, at *9 (D.N.J. Dec. 3, 2020)).  The Court noted that Plaintiffs would

have difficulty obtaining damages for past economic harm from some of the

Defendants due to their immunity under the Eleventh Amendment and the

remaining Defendants because of the latter will invoke qualified immunity.  *See id.*

at 12-13.  The Court added that even harm compensable later can become

irreparable "'where the potential economic loss is so great as to threaten the

existence of the movant's business.'"  *Id.* at 12 (quoting *Minard Run Oil Co. v.

U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011)).

Here, based on "sworn declarations," *id.* at 14, the Court found Plaintiffs

"ha[d] adequately shown that their members are likely to face economic losses that

could threaten the existence of the members' business," sufficing for "the

necessary showing of irreparable harm to justify . . . preliminary injunctive relief."

*Id.* at 15.  The Court also said Plaintiffs otherwise satisfied the irreparable harm

requirement "because those [economic] losses are likely unrecoverable from Defendants because of their sovereign and qualified immunities." *Id.*

The case for irreparable harm – even based on the equal-benefits provision alone – has only strengthened since the Court's earlier ruling. The prognostications in the earlier sworn declarations have begun to come to fruition, as the set of sworn supplemental declarations accompanying Plaintiffs' current motion evinces. The supplemental declarations establish that Plaintiffs' members' businesses have experienced marked drops in revenues over the past year due to loss of clients and resulting competitive pressures to offer services at lower rates. Illustrative are the following statements in the supplemental declarations, in which members report losses on a scale that threatens the continued viability of their businesses:

- "[M]any of our clients have chosen to discontinue operations in New Jersey due to the uncertainty surrounding the current Legislation. This business exodus has resulted in a twenty-five percent drop in sales year over year for Accu and has contributed to the upcoming closure of Accu's sister company Nationwide Staffing." Suppl. Decl. of Edward H. Damm ¶ 3, Apr. 24, 2024 (Ex. B to this Mem.).

- "[S]everal clients have requested pricing reductions to offset the increased hourly billing rates due to the Equal Benefits Provision. As a

29

result, our operating margins with these clients have been dramatically decreased. . . . In 2024 alone, this operational change has resulted in a reduction of over $5,000,000 of billing for Staffing Alternatives and that number will most likely reach $10,000,000 by the end of the year." Suppl. Decl. of Christopher Moyes ¶ 4, Apr. 24, 2024 (Ex. C to this Mem.).

- "[The Act] caused us to basically lose our biggest client . . . the revenue from this client dropped from over $3,000,000 in annual usage to about $300,000 (and dropping). . . . In addition to the example mentioned above we have lost several other smaller clients resulting in about a 20% reduction in annual revenue."  Suppl. Decl. of Polly McDonald ¶ 3, Apr. 22, 2024 (Ex. D to this Mem.).

- "[The equal-benefits provision] has resulted in significant financial setbacks, including a notable 25% decline in revenue and the loss of several key clients . . . .  To remain competitive and assist clients with the impacts of the legislation, we were compelled to lower our markups, further impacting our bottom line."  Suppl. Decl. of Juan Carlos Diaz ¶ 3, Apr. 22, 2024 (Ex. E to this Mem.).

- "Continued compliance with the Equal Benefits Provision has damaged the growth of our business.  We have been forced to close an office in

30

Middlesex County, resulting in the lay-off of two very productive

employees due to the loss of three very significant customers in that

territory.  It resulted in a loss of three (3) million dollars of annual

revenue."  Suppl. Decl. of Gerald M. Cerza ¶ 4, Apr. 22, 2024 (Ex. F to

this Mem.).

In addition to losses incurred due to clients' reticence to engage temporary

staffing agencies in New Jersey, member businesses have experienced markedly

increased costs in their attempts to comply with the equal-benefits provision,

expending great amounts of time and resources developing benefit plans to meet

the demands of the equal-benefits provision.  *See id.* ¶ 3.  And third-party clients,

too, have experienced increased costs related to the administrative requirements of

the equal-benefits provision, which, in combination with the risk of joint and

several liability imposed for violations, have driven such clients to reassess

reliance on temporary staffing agencies.  *See* Suppl. Decl. of David Hayes ¶ 3 (Ex.

G to this Mem.).[6]

The experiences to which the declarants attest are corroborated by an

internal report commissioned by NJSA at the end of 2023 (*see* Ex. H-1 to this

Mem.), which found that the New Jersey "employment services" sector

---

[6] Three additional declarations further supporting these various points appear at
Exhibits I, J, and K to this Memorandum.

experienced significant declines in employment in 2023 compared to the overall New Jersey labor market. *See* Suppl. Decl. of Denise Downing ¶ 8 (Ex. H to this Mem.), Apr. 28, 2024.

Accordingly, because Plaintiffs' members' businesses continue to be severely threatened by the Act, particularly its equal-benefits provision, Plaintiffs currently surpass the irreparable-harm threshold. Their members' viability is sufficiently threatened to alone constitute irreparable harm. Further, in any event, Plaintiffs have shown economic losses and continued losses to come, and these are no more likely compensable from Defendants through a final order assessing damages (due to the potential bars of the Eleventh Amendment and qualified immunity) than were losses at the time of the Court's earlier PI ruling. *Accord Flanagan*, 2024 U.S. Dist. LEXIS 42102, at *24 ("With the costs of complying, potential penalties for not complying, business losses incurred thus far, and the inability to recoup losses, Plaintiffs have established more than a mere possibility of irreparable harm.").

### C.    A PI Would Not Harm the Other Parties

No "potential harm to non-moving parties," namely, Defendants, would accompany granting Plaintiffs a PI. Earlier PI Op. at 29. Instead, Defendants would be relieved of a regulatory obligation for which they otherwise would be responsible. With a PI in place, Defendants' enforcement of the equal-benefits

provision would halt.  In that sense, ironically, a PI would be a help to Defendants, as they have no experience in enforcing provisions of this sort and are ill-equipped to do so without significant training.  If there is substantial chance that the Court will invalidate permanently the equal-benefits provision on ERISA preemption grounds, a PI assists Defendants by saving them the time and expense of further ramping up to enforce a provision that ultimately will be a nullity.

Defendants assumedly will try to assert that the persons who are the aim of the equal-benefits provision – *i.e.*, temporary workers – would be affected by a PI. But they are not parties to the litigation, and the effect on them implicates the public interest, not Defendants' interests, which Plaintiffs address next.  *See Flanagan*, 2024 U.S. Dist. LEXIS 42102, at *25.

D.     **The Public Interest Favors Issuance of a PI**

The public interest favors the Court issuing a PI to enjoin on ERISA-preemption grounds the equal-benefits provision.  As the district court held in *Flanagan*, a PI follows from "the public interest represented by the Supremacy Clause and Congress' decision to ensure the uniformity of law related to ERISA plans."  2024 U.S. Dist. LEXIS 42102, at *26; *accord Am. Trucking Ass'n v. City of Los Angeles*, 559 F.3d 1046, 1059-60 (9th Cir. 2009).  And while Defendants might assert "that granting the injunction harms both its and the public's interests" in that purportedly the Act's equal-benefits provision "protect[s] temporary

workers" by increasing fringe benefits for them, *id.* at *25, that assertion – even assumed to be credible – must be balanced against "the potential departure of [staffing] agencies from [New Jersey]" and the "accompanying loss of job opportunities for the hundreds of thousands of temporary workers they employ." *Id.*

In any event, temporary workers actually are *advantaged* by the PI, not harmed, given Plaintiffs' likelihood of succeeding on the merits of the ERISA-preemption claim.  In the event the Court denies the PI currently, but either this Court later grants permanent injunctive relief based on ERISA preemption or the Third Circuit later finds that ERISA preempts the Act's equal-benefits provision, then the Court will be obligated to undo the effects of its denial of the PI.  As the Supreme Court established long ago, it typically shall be "part of a judgment of reversal that the plaintiff in error be restored to all things which he hath lost by occasion of the said judgment; and thereupon, in a plain case, a writ of restitution issued at once."  *Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134, 145 (1919) (internal quotation marks and citation omitted).

> Indeed, the concept . . . has been extended to cases where the error of the decree was one of inaction rather than action, as where a court has failed to set aside the order of a commission or other administrative body; the constraint of the order being imputed in such circumstances to the refusal of the court to supply a corrective remedy.

*Atl. Coast Line R.R. Co. v. Florida*, 295 U.S. 301, 309 (1938) (Cardozo, J.).

So, if the Court denies the PI currently, beneficiaries who received additional benefits (including cash equivalents) could be subject to a restitution order to repay those benefits, in the event a final ruling (here or on appeal) vindicates ERISA preemption.  It would be in the public interest – given the strength of the case for ERISA preemption – that the Court halt benefits payments with a PI now, rather than subject the Court, Plaintiffs, and beneficiaries to a messy and uncertain restitution process later on, after beneficiaries may have relied on the received payments or even spent them.  Everyone's interests are better served by enjoining the Act now and ordering back-benefits in the (unlikely) event ERISA preemption ultimately does not prevail, rather than the Court sanctioning the payment of benefits now and mandating restitution later.

## **CONCLUSION**

The Court should grant Plaintiffs' motion for an order to show cause as to why the Court should not issue a PI to enjoin operation of the Act's equal-benefits provision.

June 6, 2024                    Respectfully submitted,

                                  /s/ Steven B. Harz
                              Steven B. Harz, Esq. I.D. #: 006921977
                              David L. Menzel, Esq. I.D. #: 003571973
                              Rubin M. Sinins, Esq. I.D. #: 046701994
                              JAVERBAUM WURGAFT HICKS KAHN
                                    WIKSTROM & SININS, P.C.
                              505 Morris Avenue, Suite 200
                              Springfield, NJ 07081
                              Tel #: (973) 379-4200
                              Fax #: (973) 379-7872
                              sharz@lawjw.com
                              dmenzel@lawjw.com
                              rsinins@lawjw.com

                              Anthony F. Shelley (*Pro Hac Vice* Admission
                                    Motion Pending)
                              Joanne Roskey (*Pro Hac Vice* Admission Motion
                                    Pending)
                              MILLER & CHEVALIER CHARTERED
                              900 Sixteenth St. NW
                              Black Lives Matter Plaza
                              Washington, DC 20006
                              Tel #: (202) 626-5800
                              Fax #: (202) 626-5801
                              ashelley@milchev.com
                              jroskey@milchev.com

                              *Attorneys for Plaintiffs New Jersey Staffing*
                              *Alliance, New Jersey Business and Industry*
                              *Association, and American Staffing Association*

36