**JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.**
Steven B. Harz, Esq. I.D. #: 006921977
David L. Menzel, Esq. I.D. #: 003571973
Rubin M. Sinins, Esq. I.D. #: 046701994
505 Morris Avenue, Suite 200
Springfield, NJ 07081
Tel #: (973) 379-4200
Direct Line #: (973) 248-4522
Fax #: (973) 379-7872
sharz@lawjw.com

Anthony F. Shelley (Admitted *Pro Hac Vice*)
Joanne Roskey (Admitted *Pro Hac Vice*)
**MILLER & CHEVALIER CHARTERED**
900 Sixteenth St. NW
Black Lives Matter Plaza
Washington, DC 20006
Tel #: (202) 626-5800
Fax #: (202) 626-5801
ashelley@milchev.com

*Attorneys for Plaintiffs New Jersey Staffing Alliance, New Jersey Business and Industry Association, and American Staffing Association*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY STAFFING ALLIANCE, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>CARI FAIS, *Acting Director of the New Jersey Division of Consumer Affairs in the Department of Law and Public Safety, et al.*,<br><br>    Defendants. | No. 1:23-cv-02494-CPO-MJS<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER TO SHOW CAUSE CONCERNING PRELIMINARY INJUNCTION ON ERISA-PREEMPTION GROUNDS** |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT .............................................................................................................1

I. DEFENDANTS' MERITS ARGUMENT IS DEPENDENT UPON CASES WHOLLY DISTINGUISHABLE FROM THIS CASE AND FAILS TO ACCOUNT FOR PRECEDENT DIRECTLY ON POINT ..........1

    A. Case Law Addressing Prevailing Wage Laws Does Not Control the ERISA Preemption Issue Before This Court .................................1

    B. Case Law Addressing Minimum Compensation or Expenditure Laws Does Not Control the ERISA Preemption Issue Here.................4

    C. Case Law Addressing Cost Regulations Does Not Control the ERISA Preemption Issue before This Court .........................................8

II. CONTRARY TO DEFENDANTS' ASSERTIONS, THE EQUITIES FAVOR ISSUANCE OF A PRELIMINARY INJUNCTION ......................10

    A. Defendants Cannot Rely on an Unlawful State Regulation of Employee Benefits to Argue the Equities Weigh Against an Injunction........................................................................................10

    B. Plaintiffs' Pending Motion Was Not Delayed, and Its Timing Helps Demonstrate That a Preliminary Injunction Is Warranted........12

CONCLUSION .......................................................................................................15

CERTIFICATE OF SERVICE ..........................................................................*Post*

# **TABLE OF AUTHORITIES**

**Page(s)**

*Aloha Airlines, Inc. v. Ahue*,
    12 F.3d 1498 (9th Cir. 1993) ....................................................................................3

*Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*,
    249 U.S. 145 (1919) ..............................................................................................11, 12

*Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A.*,
    519 U.S. 316 (1997) ................................................................................................4

*Camps Newfound/Owatonna, Inc. v. Town of Harrison*,
    520 U.S. 564 (1997) ..............................................................................................11

*Concerned Home Care Providers. Inc. v. Cuomo*,
    783 F.3d 77 (2d Cir. 2015) ....................................................................................4, 6

*Credit Managers Ass'n v. Kennesaw Life & Accident. Ins. Co.*,
    809 F.2d 617 (9th Cir. 1987) ................................................................................10

*District of Columbia v. Greater Wash. Bd. of Trade*,
    506 U.S. 125 (1992) ..............................................................................................4, 5

*Donovan v. Dillingham*,
    688 F.2d 1367 (11th Cir. 1982) ............................................................................10

*Egelhoff v. Egelhoff*,
    532 U.S. 141 (2001) ..............................................................................................7, 8

*EMW Women's Surgical Ctr., P.S.C. v. Friedlander*,
    591 F. Supp. 3d 205 (W.D. Ky. 2022) ..................................................................10

*ERISA Indus. Comm. v. City of Seattle*,
    No. C18-1188, 2020 U.S. Dist. LEXIS 81750 (W.D. Wash. May 8,
    2020), *aff'd*, 840 F. App'x 248 (9th Cir. 2021) ....................................................5

*ERISA Indus. Comm. v. City of Seattle*,
    840 F. App'x 248 (9th Cir. 2021) ..........................................................................5

*Gobeille v. Liberty Mut. Ins. Co.*,
    577 U.S. 312 (2016) ................................................................................................6

*Golden Gate Restaurant Ass'n v. City & County of San Francisco*,
    546 F.3d 639 (9th Cir. 2008) ..............................................................5, 6

*Gratz v. Bollinger*,
    539 U.S. 244 (2003) ...........................................................................11

*Gruber v. Hubbard Bert Karle Weber, Inc.*,
    159 F.3d 780 (3d Cir. 1998) ...............................................................10

*Hope v. Warden York Cnty. Prison*,
    972 F.3d 310 (3d Cir. 2020) ...............................................................13

*Ingersoll-Rand Co. v. McClendon*,
    498 U.S. 133 (1990) .............................................................................7

*Keystone Chapter, Associated Builders & Contractors, Inc. v. Foley*,
    37 F.3d 945 (3d Cir. 1994) ..........................................................*passim*

*Little Rock Fam. Planning Servs. v. Rutledge*,
    397 F. Supp. 3d 1213 (E.D. Ark. 2019), *aff'd in part, remanded
    and vacated in part*, 984 F.3d 682 (8th Cir. 2021) ............................10

*Massachusetts v. Morash*,
    490 U.S. 107 (1989) ...........................................................................10

*Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*,
    577 U.S. 136 (2016) ...........................................................................12

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers
    Ins. Co.*, 514 U.S. 645 (1995) ..........................................................8, 9

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
    592 U.S. 80 (2020) ...........................................................................8, 9

*Staffing Servs. Ass'n of Ill. v. Flanagan*,
    No. 23-C-16208, 2024 U.S. Dist. LEXIS 42102 (N.D. Ill. Mar. 11,
    2024), *appeal docketed*, No. 24-1450 (7th Cir. Mar. 25, 2024) ...................*passim*

*United States v. Washington*,
    596 U.S. 832 (2022) ...........................................................................11

iii

**Other Authorities**

Fed. R. Civ. P. 12 .............................................................................................12

# ARGUMENT

## I. DEFENDANTS' MERITS ARGUMENT IS DEPENDENT UPON CASES WHOLLY DISTINGUISHABLE FROM THIS CASE AND FAILS TO ACCOUNT FOR PRECEDENT DIRECTLY ON POINT

### A. Case Law Addressing Prevailing Wage Laws Does Not Control the ERISA Preemption Issue Before This Court

Defendants' reliance on *Keystone Chapter, Associated Builders & Contractors, Inc. v. Foley*, 37 F.3d 945 (3d Cir. 1994), involving an ERISA preemption challenge to a Pennsylvania prevailing wage statute, is misplaced. Contrary to Defendants' assertions, the equal-benefits provision at issue does not "operate[] in the same way as the challenged law in *Keystone*" or "match[]" it. Br. in Opp'n to Pls.' Mot. for Prelim. Inj. on ERISA Preemption Grounds ("Defendants' Brief"). at 21, 23 (ECF No. 59). Most fundamentally, Defendants ignore that *Keystone* and the other circuit cases they cite addressing prevailing wage laws do not concern a bilateral "reference to" and "connection with" ERISA plans, significant interference with uniform ERISA plan administration, and the particularized and ever-changing evaluation and provision of employee benefits on an individual employee basis, all of which the equal-benefits provision entails.

In *Keystone*, the prevailing wage rates, containing a cash component and a benefit component, were determined by the Secretary of Labor for each craft or classification of workers based on local collective bargaining agreements between bargaining representatives and employers. *See Keystone*, 37 F.3d at 950, 956. The

Third Circuit determined that the law did "not control benefits, but rather required certain wages be paid" based on a scheduled determined *by the Secretary* and made publicly available to the regulated community. *Id.* at 956. According to the Third Circuit, the law "establish[ed] a system of wage regulation that neither burdens nor influences the benefits or structure of employee benefit plans, nor does it interfere with the uniform administration of such plans." *Id.* at 963.

By contrast, the equal-benefits provision relates to the ERISA plans of both staffing agencies and their clients. The amount staffing agency employers are required to devote to benefits or pay in cash in lieu of benefits is not pursuant to a fixed schedule set by an independent third-party like a Secretary of Labor. The only way a staffing agency can determine what its substantive obligations are under the equal-benefits provision is to compare, for each employee it places with a client, the benefits it provides under its employee benefit plans and the value of those benefits to the benefits that its clients provide their employees for similar work. This laborious comparison is wholly distinct from what is required under the prevailing wage laws where minimum wage rates are preset independently by government officials or entities without reference to ERISA plans and applied uniformly for all similarly situated workers on public works projects in a locality. The obligations and burdens imposed by the equal-benefits provision, not present in the prevailing wage law context, thwart staffing agencies' ability to structure

their ERISA-covered benefit offerings based on their own business and workforce needs and administer their ERISA plans in a nationally uniform manner.

The district court in *Staffing Services Ass'n of Illinois v. Flanagan*, No. 23-C-16208, 2024 U.S. Dist. LEXIS 42102 (N.D. Ill. Mar. 11, 2024), *appeal docketed*, No. 24-1450 (7th Cir. Mar. 25, 2024), aptly recognized this key distinction between prevailing wage laws setting minimum wages on public works projects and an Illinois law almost identical to the equal-benefits provision. The *Flanagan* court found that not only may prevailing wage laws be afforded some deference on account of their focus on minimum wages on public works projects – an area of traditional state regulation distinct from the regulation of employee benefits – but also that such laws "often come with a public schedule of wages that makes compliance far different from and less difficult than the discretionary and individualized determinations" necessitated by laws like the equal-benefits provision. *Id.* at *12; *see Aloha Airlines, Inc. v. Ahue*, 12 F.3d 1498, 1505 (9th Cir. 1993) (state law requiring administrative scheme for recurring, individualized cash payments "does not represent a regulation of traditional state authority" subject to special deference and is preempted by ERISA) (emphasis removed).

Significantly, the *Keystone* court also recognized that laws like the equal-benefits provision are the very types of laws ERISA preempts. *See Keystone*, 37 F.3d at 957. The Third Circuit made this observation when distinguishing the

3

prevailing wage law in *Keystone* from the law requiring equal health benefits for employees on workers compensation in *District of Columbia v. Greater Washington Board of Trade,* 506 U.S. 125 (1992), controlling precedent that is discussed in detail in Plaintiffs' Memorandum. *See* Pls.' Mem. in Supp. of Mot. for an Order to Show Cause Concerning Prelim. Inj. on ERISA-Preemption Grounds ("Plaintiffs' Memorandum") at 23-27 (ECF No. 54-1). The District of Columbia law, like the equal-benefits provision, was preempted by ERISA because the "injured employees' rights were premised on the existence of ERISA plans." *Keystone*, 37 F.3d at 957; *accord Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A.*, 519 U.S. 316, 324-25 (1997) (holding prevailing wage mandate was not preempted by ERISA and citing *Greater Washington* as an example of a case involving a law preempted by ERISA because it imposed requirements that referenced ERISA-covered programs and the existence of an ERISA plan was, therefore, central to its operation).

### B. Case Law Addressing Minimum Compensation or Expenditure Laws Does Not Control the ERISA Preemption Issue Here

Defendants' claim that the equal-benefits provision is analogous to laws mandating employee minimum compensation or expenditures that courts have ruled are not preempted by ERISA is, likewise, unsupported by the cases upon which Defendants rely. *See* Defs.' Br. at 24-25. Defendants cite *Concerned Home Care Providers. Inc. v. Cuomo*, 783 F.3d 77 (2d Cir. 2015) (state law mandating

4

home care worker wage rates); *Golden Gate Restaurant Ass'n v. City & County of San Francisco*, 546 F.3d 639 (9th Cir. 2008) (ordinance mandating a certain level of health care expenditures on behalf of covered employees); and *ERISA Industry Committee v. City of Seattle*, 840 F. App'x 248 (9th Cir. 2021) (ordinance mandating minimum health care expenditures to covered hotel employees), all of which involved laws that set uniform compensation or expenditure levels by reference to some specified, fixed source independent from an ERISA plan. Based on these facts alone, those cases and laws are distinguishable from the equal-benefit provision, which requires staffing agencies to make individual and particularized comparisons with reference to the benefits offered to employees through their own and their clients' ERISA plans.[1]

In addition, contrary to Defendants' contention, the fact that the laws in these minimum compensation and expenditure cases, like the prevailing wage laws

---

[1] Again, Defendants, when discussing these minimum compensation and expenditure cases, fail to acknowledge how the courts have distinguished the laws involved from the type of equal-benefit laws at issue in *Greater Washington* and the instant case. In *Golden Gate*, the Ninth Circuit distinguished the local ordinance in that case from the District of Columbia equal-benefits law, stating that, with the former, an employer who is obligated to comply with the ordinance "calculates its required payments based on the hours worked by its employees *rather than on the value or nature of the benefits available to ERISA plan participants*" as required under the preempted equal benefit law in Greater Washington. *See Golden Gate*, 546 F.3d at 658 (emphasis added); *see also ERISA Indus. Comm. v. City of Seattle*, No. C18-1188, 2020 U.S. Dist. LEXIS 81750, at *15 (W.D. Wash. May 8, 2020), *aff'd*, 840 F. App'x 248 (9th Cir. 2021) ("[T]he

5

discussed above, provided an option for employers to comply through the payment of cash only and could "'function[] irrespective of . . . the existence of an ERISA Plan,'" does not end the relevant ERISA preemption inquiry. Defs.' Br. at 38 (quoting *Concerned Home Care Providers*, 783 F.3d at 90). Defendants erroneously equate the availability of a cash payment option with a determination that a law does not have a sufficient "reference to" or "connection with" an ERISA plan to trigger ERISA preemption. This reasoning is flawed, and these cases are distinguishable from the instant case for the same reasons articulated above and made clear by the *Flanagan* court. The fact that a staffing agency's obligations under the equal-benefits provision can be met through a cash payment equal in value to the comparable benefits does not negate its impermissible reference to or connection with ERISA plans and their administration or incompatibility with ERISA's objective of nationally uniform plan administration. *See Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016).

---

*Greater Washington* plan incorporated a reference to an ERISA plan in determining the amount of coverage under that ordinance. In contrast, neither the *Golden Gate* ordinance nor [the Seattle ordinance] measure the required level of payments based on an ERISA plan. In particular, [the Seattle ordinance] sets payments on dollar amounts determined by the employee's status.") (internal citations omitted). Like in *Greater Washington*, the "required level of payments" due under the equal-benefits provision is based on an ERISA plan and on "the value of benefits available to ERISA plan participants," and is not determined by some rote mathematical calculation involving a preset dollar amount as seen in *Golden Gate* and *ERISA Industry Committee*.

As the *Flanagan* court noted, *see* 2024 U.S. Dist. LEXIS 42102, at *7-8, the Supreme Court's holding in *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001), provides the controlling rule of law on this point. *Egelhoff* involved an ERISA preemption challenge to a statute that automatically revoked the designation of a spouse as the beneficiary of a nonprobate asset – defined to include an employee benefit plan – upon divorce. The statute allowed employers to opt-out of its requirements in plan documents, which the respondents opposing ERISA preemption asserted made the law less burdensome and demonstrated that it did not impair uniformity of plan administration. *Id.* at 150. The Supreme Court found the law to be preempted, stating that "[t]he statute is not any less of a regulation of the terms of ERISA plans simply because there are two ways of complying with it." *Id.* at 150-51.

> It is not enough for plan administrators to opt out of this particular statute. Instead, they must maintain a familiarity with the laws of all 50 States so that they can update their plans as necessary to satisfy the opt-out requirements of other, similar statutes. They also must be attentive to changes in the interpretations of those statutes by state courts. This "tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction" is exactly the burden ERISA seeks to eliminate.

*Id.* at 151 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)).

*Egelhoff*, decided after *Keystone*, nullifies Defendants' suggestion based on *Keystone* that a law will not have an impermissible "connection with" an ERISA plan if it provides an employer a means to opt-out of some of its requirements or only "relates to" an ERISA plan at the election of an employer. *See* Defs.' Br. at

7

25-27. As demonstrated in Plaintiffs' Memorandum and the supplemental declarations in support of it, the burdens on plans and interference with nationally uniform plan administration resulting from the equal-benefits provision are even more onerous and disruptive than the burdens noted in *Egelhoff*.[2]

### C. Case Law Addressing Cost Regulations Does Not Control the ERISA Preemption Issue before This Court

Defendants' argument that the equal-benefit provision is only a cost regulation that does not "reference" or have a "connection with" ERISA plans is, likewise, unfounded. In contrast to *Rutledge v. Pharmaceutical Care Management Ass'n*, 592 U.S. 80 (2020), and *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645 (1995), the equal-benefits provision is not a "form of cost regulation" directed at non-plan entities that

---

[2] Defendants' claim that the equal-benefits provision involves "little if any administrative burden on administrators" because "the agency employer must simply calculate all-in total compensation – wages and cost of providing benefits" belies the actual hardships the law imposes and demonstrates a lack of understanding of how employer-sponsored benefits are administered and funded. Defs.' Br. at 27-29. Both *Flanagan* and Plaintiffs' Memorandum describe in detail how laws like the equal-benefit provision create enormous and costly administration burdens on plans and interfere with uniform plan administration, especially for plans offered by employers with employees in multiple states. *See Flanagan*, 2024 U.S. Dist. LEXIS 42102, at *13; Pls.' Mem. at 16-18. Defendants have not refuted and cannot refute the clearly articulated effects on ERISA plans, employers, or employees, including the uncertainty and instability for all involved, that results when employee benefits and their cash equivalent must be determined on an individual-employee and fluctuating basis with reference to another employer's benefit design and funding decisions.

8

"merely increase[s] costs or alter[s] incentives for ERISA plans." *Rutledge*, 592 U.S. at 88. To the contrary, like the law in *Flanagan*, the equal-benefits provision's "connection with" ERISA plans is based on the law's requirement that staffing agencies "determine the value of many different benefit plans and then determine whether to provide the value in cash or benefits themselves by modifying their plans or adopting new ones." *Flanagan*, 2024 U.S. Dist. LEXIS 42102, at *7. Further, the law denies staffing agencies the ability to administer their ERISA plans uniformly and mandates state-imposed ERISA plan benefits. *Id.* at *8-9; *see supra* p. 8 n.2.

Similarly, neither of the cost regulations in *Rutledge* and *Travelers* made ERISA plans the benchmarks for legal requirements. *Rutledge*'s cost mandate required pharmacy benefit managers ("PBMs") to reimburse pharmacies at a rate at or above the latter's acquisition costs. *See Rutledge*, 592 U.S. at 84-85. The law in *Travelers* imposed surcharges on hospital services in amounts established by statute. *See Travelers*, 514 U.S. at 659. Those laws were found to regulate PBM payments to pharmacies and the cost of hospital services with only indirect economic effects on ERISA plans, and they did not bind ERISA plans for the purpose of establishing reference points to measure benefits or their cash value.[3]

---

[3] Defendants' contention that employers' making of cash payments under the equal-benefits provision would not rise to the level of state-mandated ERISA plans

9

## II. CONTRARY TO DEFENDANTS' ASSERTIONS, THE EQUITIES FAVOR ISSUANCE OF A PRELIMINARY INJUNCTION

### A. Defendants Cannot Rely on an Unlawful State Regulation of Employee Benefits to Argue the Equities Weigh Against an Injunction

Defendants argue that New Jersey will be irreparably injured if it is not permitted to effectuate the equal-benefits provision enacted by the Legislature. *See* Defs.' Br. at 8. This argument should be given no weight, as an injunction preventing a state from enforcing unconstitutional acts "'does not irreparably harm the [s]tate.'" *EMW Women's Surgical Ctr., P.S.C. v. Friedlander,* 591 F. Supp. 3d 205, 215 (W.D. Ky. 2022) (quoting *Little Rock Fam. Planning Servs. v. Rutledge*, 397 F. Supp. 3d 1213, 1322 (E.D. Ark. 2019), *aff'd in part, remanded and vacated in part*, 984 F.3d 682 (8th Cir. 2021)).

---

or benefits (triggering preemption, in its own right) is also unsupported. Defs.' Br. at 30-31. Although some cases mention payments to employees from a segregated trust as an *indicium* of an ERISA plan, *see, e.g., Massachusetts v. Morash*, 490 U.S. 107, 114 (1989), and indicate that some payments of benefits, such as vacation benefits, from an employer's general assets are not ERISA plans, *id.* at 117-18, the payment of benefits from an employer's general assets alone is not determinative of whether or not an ERISA plan exists. As the Third Circuit has recognized, "'[a]n employer . . . can establish an ERISA plan rather easily.'" *Gruber v. Hubbard Bert Karle Weber, Inc.*, 159 F.3d 780, 789 (3d Cir. 1998) (quoting *Credit Managers Ass'n v. Kennesaw Life & Accident. Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987), and adopting the test for an ERISA plan set forth in *Donovan v. Dillingham,* 688 F.2d 1367, 1372 (11th Cir. 1982)). Moreover, as Plaintiffs have noted (*see* Pls.' Mem. at 18-19 & n.4), numerous decisions within this Circuit hold that a program of cash payments constitutes an ERISA plan, where, as here, making the cash payment requires individualized, discretionary determinations and an accompanying administrative apparatus.

10

Likewise, Defendants' claim that the equities favor denial of a preliminary injunction to protect the reliance interests of covered workers is unpersuasive when that reliance is premised on an illegal legislative mandate. *See* Defs.' Br. at 9-10. Courts have regularly prevented unconstitutional laws from becoming effective even though certain persons or interests would have benefitted from their enforcement. *See, e.g., United States v. Washington*, 596 U.S. 832 (2022) (holding state law that made it easier for federal contractor workers to establish entitlement to worker compensation relative to other workers violated Supremacy Clause)*; Gratz v. Bollinger*, 539 U.S. 244 (2003) (holding university's undergraduate admissions policy violated Equal Protection Clause and other federal laws by giving preferences on the basis of race)*; Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564 (1997) (holding that state property tax violates the Commerce Clause because its exemption for property owned by charitable institutions excludes organizations operated principally for the benefit of nonresidents).

Indeed, equity and the interests of covered workers, who could be subject to recoupment actions for wrongfully paid benefits, would be advanced by the issuance of a preliminary injunction. *See* Pls.' Mem. at 34-35 (discussing *Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 145 (1919)). Though Defendants maintain there could be no recoupment effort because covered workers

are not parties to this action, Defendants misunderstand the recoupment remedy. ERISA authorizes – in fact, requires – an ERISA-plan fiduciary to recollect wrongly paid or retained benefits from beneficiaries, where there is an equitable basis for doing so and the money can be traced to the beneficiaries. *See Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142-46 (2016). An incorrectly denied injunction request would provide the equitable basis (under *Arkadelphia*) for recouping payments made in the meantime, whether through an adjunct order in this case or eventually separate equitable-restitution actions before this Court (or another) pursuant to ERISA. Thus, if an injunction is due, covered workers are better off not obtaining benefits in the first instance, rather than potentially relying on them to their detriment when they may need to return the benefits later.

### B. Plaintiffs' Pending Motion Was Not Delayed, and Its Timing Helps Demonstrate That a Preliminary Injunction Is Warranted

Plaintiffs did not delay in filing their Amended Complaint or pending motion as Defendants assert, and the timing of these filings in no way negates the irreparable harm Plaintiffs have sustained and will continue to suffer if a preliminary injunction is not granted. To the contrary, these filings were made in accordance with applicable rules of procedure, before Defendants filed an answer to the original Complaint or a motion under Federal Rules of Civil Procedure 12(b), (e), or (f), and while this litigation was essentially on hold pending the

12

appeal to the Third Circuit.  *See* Pls.' Mem. at 5 n.1.  Further, Plaintiffs' ERISA preemption challenge and request for a preliminary injunction on that ground were made promptly after the *Flanagan* court issued the first decision of its kind in March 2024 establishing that ERISA preemption is a viable basis for challenging equal-benefits laws like the one at issue here, which has been in effect for less than a year and under challenge since before that time.[4]

For these reasons, Plaintiffs have not been dilatory, and, in fact, the timing of the pending motion aids the Court in assessing the appropriateness of the relief sought.  As the supplemental declarations accompanying the pending motion demonstrate, the irreparable harms that the declarants correctly anticipated have been realized, and the demonstrated harms, including those resulting from Defendants' expanded enforcement activities, will continue and exceed the irreparable harm threshold.  *See* Pls.' Mem. at 9-10, 27-32 (addressing irreparable harm); Decl. of Robert Kirkland ¶¶ 4-5 (referencing no less than 46 State investigations) (ECF No. 59-1).

The information about *actual* harms sustained in the supplemental declarations contradicts Defendants' unfounded claims that Plaintiffs "fail to

---

[4] Plus, there is no basis for applying a heightened burden of proof as Defendants suggest, *see* Defs.' Br. at 6-7, because Plaintiffs are not seeking a mandatory injunction, but only one that will enjoin operation of the equal-benefits provision. *See, e.g.*, *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020).

13

produce affirmative evidence of irreparable harm stemming from the Equal Benefits Provision" and that those declarations did not adequately tie the harms sustained to that provision. *See* Defs.' Br. at 14-15. In addition, the fact that some of the reported actual harms from the equal-benefits provision are not yet co-extensive with the anticipated harms to which the declarants previously attested in 2023 should not be construed as negating the extent of the harms arising from the equal-benefits provision or need to maintain the pre-Legislation status quo while this case proceeds. Rather, the full extent of the on-going harms has, not surprisingly, not yet been realized in the first year. For example, the fact that Two Rivers Benefits Consultants, LCC has not yet permanently left New Jersey does not mean that will not happen in the future, and United Temporary Services, Inc.'s reported loss of three significant customers and $3 million in revenue should not be construed as the full extent of harm the company will sustain over time. *See id.* at 15 & n.9.

14

## **CONCLUSION**

The Court should enjoin operation of the equal-benefits provision on ERISA preemption grounds.

July 19, 2024                                     Respectfully submitted,

                                               /s/ Steven B. Harz
Steven B. Harz, Esq. I.D. #: 006921977
David L. Menzel, Esq. I.D. #: 003571973
Rubin M. Sinins, Esq. I.D. #: 046701994
JAVERBAUM WURGAFT HICKS KAHN
       WIKSTROM & SININS, P.C.
505 Morris Avenue, Suite 200
Springfield, NJ 07081
Tel #: (973) 379-4200
Fax #: (973) 379-7872
sharz@lawjw.com
dmenzel@lawjw.com
rsinins@lawjw.com

Anthony F. Shelley (Admitted *Pro Hac Vice*)
Joanne Roskey (Admitted *Pro Hac Vice*)
MILLER & CHEVALIER CHARTERED
900 Sixteenth St. NW
Black Lives Matter Plaza
Washington, DC 20006
Tel #: (202) 626-5800
Fax #: (202) 626-5801
ashelley@milchev.com
jroskey@milchev.com

*Attorneys for Plaintiffs New Jersey Staffing Alliance, New Jersey Business and Industry Association, and American Staffing Association*

15