# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NEW JERSEY STAFFING ALLIANCE,
*et al.*,

              Plaintiffs,

    v.

CARI FAIS, *et al.*,

              Defendants.

No. 1:23-cv-2494

**OPINION**

**APPEARANCES**:

Steven Barry Harz
Rubin Sinins
David L. Menzel
Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P.C.
505 Morris Avenue
Suite 200
Springfield, NJ 07081

    *On behalf of Plaintiffs.*

Eve Elizabeth Weissman
Jessica L. Palmer
Nathaniel Ilan Levy
Lauren Elizabeth Van Driesen
Office of the New Jersey Attorney General
      Division of Law
25 Market Street
Trenton, NJ 08625

    *On behalf of Defendants.*

**O'HEARN, District Judge.**

    This motion is the proverbial second bite at the apple and comes before the Court, for the

second time, on a Motion for an Order to Show Cause Concerning a Preliminary Injunction by

Plaintiffs New Jersey Staffing Alliance, New Jersey Business and Industry Association, and American Staffing Association (collectively, "Plaintiffs"). (ECF No. 54). The Court held a hearing on July 29, 2024. (ECF No. 64). For the reasons that follow, Plaintiffs' Motion, (ECF No. 54), is **DENIED**.

## I.        BACKGROUND and PROCEDURAL HISTORY[1]

The State of New Jersey enacted the Temporary Workers' Bill of Rights ("the Act") on February 6, 2023. *See* N.J.S.A. § 34:8D-1, *et seq.* While the Act imposes a variety of requirements on the companies that hire temporary workers as well as the staffing agencies who supply them, at issue here is only Section (7)(b) ("the equal benefits provision") of the Act which requires a temporary worker "not be paid less than the average rate of pay and average cost of benefits, or the cash equivalent thereof, of employees of the third party client performing the same or substantially similar work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions for the third party client at the time the temporary laborer is assigned to work at the third party client." *Id.* at § (7)(b). Each violation of the equal benefits provision constitutes a separate violation whereby an aggrieved temporary worked may file a civil suit on behalf of themselves and others similarly situated against the third-party client and/or the temporary staffing agency, for up to $50 per day of the violation, actual damages, and attorney's fees and costs. *Id.* at § 11.

Plaintiffs initially sought a temporary restraining order and preliminary injunction seeking to enjoin the Act in its entirety on May 5, 2023 on constitutional grounds. *See* (ECF No. 1). After

---

[1]  As the parties are intimately familiar with the facts of this case, and because the Court has already set forth the background of this matter in an earlier Opinion, (ECF No. 34), as has the Court of Appeals, *see* 110 F.4th 201 (3d Cir. 2024), the Court will only state those facts necessary to address the instant motion.

hearing oral argument, the Court denied the request for injunctive relief, (ECF No. 34), and the Third Circuit affirmed. 110 F.4th 201 (3d Cir. 2024). The Act went into effect on August 5, 2023. *See* N.J.S.A. § 34:8D-1, *et seq.*

Approximately one year after first seeking emergency injunctive relief, Plaintiffs amended their Complaint on May 21, 2024 to add an Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, preemption claim under 29 U.S.C. § 1144(a). (ECF No. 43 at ¶¶ 100–05).[2] Plaintiffs thereafter filed a Motion for an Order to Show Cause Concerning Preliminary Injunction on ERISA-preemption grounds on June 6, 2024.[3] (ECF No. 54). Defendants filed opposition on July 5, 2024, (ECF No. 59), to which Plaintiffs replied on July 19, 2024. (ECF No. 61). The Court heard oral argument on the motion on July 29, 2024. (ECF No. 64).

## II.    <u>LEGAL STANDARD</u>

### A. Federal Rule of Civil Procedure 65

Federal Rule of Civil Procedure 65 empowers courts to grant temporary and preliminary injunctive relief when warranted. Fed. R. Civ. P. 65. "[I]njunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). To obtain a preliminary injunction under the Rule, a movant must

---

[2] There is no dispute that Plaintiffs were entitled to file an Amended Complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1) as the parties had requested to stay the Defendants' time to respond to the Complaint until disposition of the then-pending appeal. *See* (Defs.' Ltr., ECF No. 48 at 1–2).

[3] Plaintiffs initially filed a motion for indicative ruling pursuant to Federal Rule of Civil Procedure 62.1. (ECF No. 44). Plaintiffs withdrew the motion as all parties agreed that this Court retained jurisdiction over the newly asserted ERISA preemption claim while the Court's prior denial of the first preliminary injunction motion was pending appeal. *See* (Pls.' Ltr., ECF No. 51).

show:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be
> irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in
> considering whether to grant a preliminary injunction, should take into account, when they
> are relevant, (3) the possibility of harm to other interested persons from the grant or denial
> of the injunction, and (4) the public interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Port Auth. v. Transam. Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974). Of these factors, the first two are "most critical," and a movant's failure to establish either at the "gateway" requires the denial of the requested relief. *Reilly*, 858 F.3d at 179 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

## III.   <u>DISCUSSION</u>

Plaintiffs seek emergency injunctive relief to prevent Defendants from continuing to enforce the equal benefits provision of the Act, arguing that it is preempted by ERISA. (ECF No. 54-1 at 1). Plaintiffs contend that they are likely to succeed on the merits and that they have and will continue to suffer irreparable harm unless the Court grants injunctive relief. (ECF No. 54-1 at 2). For the reasons that follow, the Court concludes that, while it is possible that Plaintiffs may ultimately succeed on the merits, they have not carried their burden to show they are likely to succeed and, most importantly, fail to make the necessary showing with respect to irreparable harm, particularly considering and balancing the significant public interests and the greater harm that would result from granting injunctive relief at this time. Therefore, Plaintiffs' application for emergency injunctive relief must again be denied.

**A. Plaintiffs Have Not Made the Necessary Showing with Respect to Irreparable Harm and Public Interest**

Plaintiffs argue that their "case for irreparable harm . . . has only strengthened since the Court's earlier ruling," and that of which Plaintiffs warned has occurred.[4] (ECF No. 54-1 at 29). Specifically, Plaintiffs point to the revenue loss of their members' businesses and third-party clients "due to loss of clients and resulting competitive pressures to offer services at lower rates." (ECF No. 54-1 at 29; Exs. B–F). Plaintiffs also allege that their members have experienced increased costs in attempting to comply with the equal benefits provision. (ECF No. 54-1 at 31; Exs. G, I–K). While that indeed may be the economic reality for Plaintiffs' members and their third-party clients, Plaintiffs have failed to meaningfully address how two important issues impact the irreparable harm analysis now presented to the Court: (1) their over one-year delay in asserting the ERISA preemption claim and (2) how an injunction would disrupt the status quo that has been in place over the past year. While the Court in its earlier Opinion did find that Plaintiffs had sufficiently shown irreparable harm based on the fact that the Defendants were likely immune, which would preclude Plaintiffs from recovering their economic losses, *see* (ECF No. 34 at 10),[5] the Court is not persuaded that those losses now outweigh these two issues which did not previously factor into the Court's analysis.

"Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights." *Lanin v. Borough of Tenafly*, 515 F. App'x 114,

---

[4] Defendants point to several instances where the harm warned of by Plaintiffs in their first request for preliminary injunctive relief, (ECF No. 1), have either not occurred or not occurred to the extent that Plaintiffs anticipated. *See* (ECF No. 59 at 17).

[5] The Court notes that it had "some skepticism as to the exact magnitude of damage that Plaintiffs will suffer." (ECF No. 34 at 13 n.6) (internal quotation marks, citation, and emphasis omitted).

117–18 (3d Cir. 2013) (internal quotation marks, citation, and alteration omitted). "Delay in seeking enforcement of those rights tends to indicate at least a reduced need for such drastic, speedy action." *Id.* at 118 (internal quotation marks, citation, and alteration omitted). Therefore, relevant to the irreparable harm analysis is "how urgently a party has pursued their claims." *Def. Distrib. v. Att'y Gen. of N.J.*, 972 F.3d 193, 200 (3d Cir. 2020). If a plaintiff's "litigation strategy . . . represents 'a strong indication that the status quo can continue,' . . . an assertion of irreparable harm" is belied. *Id.* at 201 (quoting *United States v. Wade*, 713 F.2d 49, 53 (3d Cir. 1983)). Indeed, delay in bringing a claim "knocks the bottom out of any claim of immediate and irreparable harm." *Pharmacia Corp. v. Alcon Lab'ys, Inc.*, 201 F. Supp. 2d 335, 383–84 (D.N.J. 2002) (finding no irreparable harm after a yearlong delay and collecting cases where between two- and ten-month delays precluded preliminary injunction).

Plaintiffs in their Reply Brief[6] argue that there was no delay in bringing their ERISA claim because they were entitled to amend their Complaint as of right. (ECF No. 61 at 12–13). Procedurally, that is correct, but the issue is not one of procedure. Plaintiffs cannot adequately explain why they waited a year to bring a preemption claim other than to say that they did so "promptly" after another district court found that ERISA preempted a similar Illinois statute.[7] (ECF No. 61 at 13); *see Staffing Servs. Ass'n of Ill. v. Flanagan*, ___ F. Supp. 3d ___, 2024 WL 1050160 (N.D. Ill. 2024), *appeal filed*, No. 24-1450 (7th Cir. Mar. 25, 2024). The ERISA preemption statute went into effect in 1975, has been litigated for decades, and is consistently used to challenge a multitude of state laws that "relate to any employee benefit plan." 29 U.S.C. §

_____

[6] Plaintiffs do not address the issue in their Moving Brief. *See generally* (ECF No. 54).

[7] Further, the filing an Amended Complaint on May 21, 2024—more than two months after the *Flanagan* decision was published on March 11, 2024—was less than "prompt."

1144(a). Though *Flanagan* may have prompted Plaintiffs' awareness of this potential legal argument and to consider asserting ERISA preemption as a claim here, that they did not do so until *after Flanagan* does not excuse their delay in failing to make a viable, frequently made argument the first time around *before* the equal benefits provision went into effect. This "litigation strategy thus . . . belies an assertion of irreparable harm." *Def. Distrib.*, 972 F.3d at 201; *see also Pharmacia Corp.*, 201 F. Supp. 2d at 383–85 (one-year inexcusable delay precluded finding of irreparable harm); *Messina v. Coll. of N.J.*, 566 F. Supp. 3d 236, 249 (D.N.J. 2021) (finding no irreparable harm after Plaintiffs waited four months to request injunctive relief); *Lanin*, 515 F. App'x at 117–18 (affirming district court's finding of no irreparable harm after two-year delay). Though Plaintiffs argue they will continue to be irreparably harmed if the equal benefits provision is allowed to continue in effect, "any purported harm Plaintiffs may face is a consequence of their own delay" in belatedly asserting this new theory. *Messina*, 566 F. Supp. 3d at 249.

Plaintiffs' delay also substantially impacts the analysis of whether entering a preliminary injunction would needlessly disrupt the status quo as the landscape has now substantially changed. *See Def. Distrib.*, 972 F.3d at 201 (explaining that delay is "a strong indication that the status quo can continue") (internal quotation marks and citation omitted). Yet, Plaintiffs have dedicated even less attention to this issue in their Reply Brief, (ECF No. 61 at 14), and again completely fail to address it in their Moving Brief. The status quo that exists today is far different from that which existed at the time of the Court's initial decision. As the equal benefits provision has been in place for over a year as of the date of this Opinion, disruption of the status quo is of utmost concern to the Court. *See Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 219 n.13 (3d Cir. 2014) ("a party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity.") (internal quotation marks, citation, and

alteration omitted).

Here, there is no question that granting Plaintiffs the relief they seek would substantially alter the status quo. Generally, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 200 (3d Cir. 2024), and is typically done to "restore th[e] state of affairs." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990). But that is usually *before* the challenged law or action has taken place, not a year after, hence why the cause of action offers *preliminary* relief.

The State has given notice of the intent to promulgate regulations related to the Act and is presently considering comments received from the public before enactment. *See* (ECF No. 59 at 4). A non-profit has also provided training to educate those affected by the Act as to its provisions and the State has begun to establish mechanisms and protocols as to how it will be enforced. *See* (ECF No. 59 at 9–10; ECF No. 59-2 at ¶¶ 7–13). If the Court granted Plaintiffs the relief they seek here, that would all come to an abrupt halt and the landscape of temporary staffing in the State of New Jersey would change for the third time in a year (pre-enactment, enactment, and entry of preliminary injunction). This is particularly true as to the Act, which, according to Plaintiffs, has had the effect of increasing wages of temporary workers[8]—which, at least as of 2021, were over 510,000 workers in the State of New Jersey[9]—and providing them with benefits. *See, e.g.*, (ECF No. 54-1 at 29). Thus, many individual workers, and their families, have likely made important

---

[8]  This is also bolstered by a 2023 employment report attached to Plaintiffs' brief that explains that the Act "possibly improved wage levels for temporary laborers." (ECF No. 54-11, Ex. H-1 at 7).

[9]  *See* (ECF No. 54-10 at Ex. H ¶ 3).

life decisions in reliance upon continued receipt of these increased wages and benefits. Such reliance is particularly reasonable given this Court's prior denial of injunctive relief before the effective date of the Act and the recent affirmance thereof.

For the Court to enjoin the Act now, after a year, would undoubtedly cause substantial harm to these individuals and would not be in the public interest.[10] For example, would the wages of these temporary workers now suddenly revert back to the lower rates of pay prior to the Act? Would the benefits which have been provided to them now be suddenly rescinded?[11] Plaintiffs provide no real appreciation for these harms which the Court must consider and balance in determining whether to grant injunctive relief. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (explaining that a court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."); *see also Bay State Lighting Co., Inc. v. Voight Lighting Indus., Inc.*, No. 84-118, 1984 WL 1450, at *6 (D.N.J. July 17, 1984) ("recogniz[ing] the rights of innocent third parties affected by the grant or denial of injunctive relief"). Indeed, the Court is hard pressed to imagine a situation that would upset the status quo more and detrimentally impact public interest, not just for temporary workers, but also for

---

[10]  Though the Court need not reach the issue of public interest since Plaintiffs have not demonstrated irreparable harm or, as discussed in Section III.B., *infra*, a likelihood of success on the merits, the Court will nonetheless briefly discuss the issue due to the wide-ranging impact of the Act on many New Jersey temporary workers. *See Reilly*, 858 F.3d at 179 (explaining that, only if the first two factors of the preliminary injunction standard are met does "a court then consider[] the remaining two factors").

[11]  By way of further example, individuals and families have undoubtedly made decisions about their daily living conditions and expenses that would be severely and negatively impacted by a sudden and unexpected change in the status quo at this time. For example, a temporary worker who received a substantial increase in wages over the past year may have rented or purchased a home, purchased an automobile, enrolled a child in a private school, or made many other of the choices families face every day in this State, all in the continued expectation of receiving such wages. There can be no doubt an injunction at this time would substantially and negatively impact these individuals and their families.

Plaintiffs' members and their third-party clients. *See*, *e.g.*, *Columbus v. State*, 223 N.E.3d 540, 557 (Ohio Ct. App. 2023) (vacating a preliminary injunction, finding that, because the challenged law had been in effect for four years when the lower court enjoined it, "the preliminary injunction instead contravened the status quo" as opposed to preserving it).

Because Plaintiffs "inexcusably delayed" bringing their ERISA preemption claim, and because entry of a preliminary injunction would severely and indisputably disrupt the status quo and not be in the public interest, the Court finds that Plaintiffs have not met their burden to show irreparable harm at this stage, or that the harm to Plaintiffs in not granting injunctive relief is greater than the harm that would be caused if the Court were to grant such relief. *Pharmacia Corp.*, 201 F. Supp. 2d at 385; *see also Ferring Pharms.*, 765 F.3d at 219 n.13. Indeed, the Court finds the opposite to be the case.

## B. Likelihood of Success on the Merits

The Court could end its analysis here, as the failure to establish irreparable harm necessarily precludes the entry of preliminary injunctive relief. *See Messina*, 566 F. Supp. 3d at 244–45) ("the moving party must demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted.") (quoting *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir. 1987)) (emphasis in original). However, the Court continues with its analysis of Plaintiffs' likelihood of success on the merits as Plaintiffs fail to carry their burden in this respect as well.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [governed by ERISA]." 29 U.S.C. §1144(a). ERISA governs employee benefit plans "established or maintained by any employer engaged in commerce or in any industry or activity affecting commerce; or by any employee organization or organizations representing

employees engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a). There are only limited exceptions to ERISA's purview, including plans established or maintained by the government and churches, among other narrow categories. *Id.* at § 1003(b). Employee benefit plans are defined as those that provide medical and other benefits including but not limited to disability, death, unemployment, and vacation benefits, scholarship funds, and prepaid legal services. *Id.* at § 1002(1).

There are two broad categories of plans that are preempted by ERISA: (1) state laws that "reference" ERISA plans and (2) those with an "impermissible connection" to ERISA plans. *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319–20 (2016). The former occurs when a state law "acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation"; the latter occurs when a state law attempts to "govern[] a central matter of plan administration or interferes with nationally uniform plan administration." *Id.* (internal quotation marks, citations, and alterations omitted). "When considered together, these formulations ensure that ERISA's express pre-emption clause receives the broad scope Congress intended." *Id.* at 320.

Plaintiffs argue that the equal benefits provision both references and has an impermissible connection to ERISA plans. (ECF No. 54-1 at 13). Plaintiffs have the potential to ultimately succeed on the merits for largely the same reasons as the plaintiffs in *Flanagan*, *see* 2024 WL 1050160,[12] however, on the current record, the Court is not sufficiently convinced that Plaintiffs have shown a likelihood of success on the merits. And certainly not one that would outweigh the

---

[12] Of course, *Flanagan* is a district court case and is not binding upon this Court. Further, it is important to note that there the Court considered the request for injunctive relief and weighed the required factors prior to the law taking effect. As explained above, here the circumstances are far different and those considerations should be afforded greater weight in the Court's overall analysis.

public interest and substantial concerns as to the change in status quo that would result from the grant of injunctive relief.

A state law has an impermissible connection with ERISA plans when it "dictate[s] the choice[s] facing ERISA plans." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 150 (2001) (quoting *Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 334 (1997)). Here, the equal benefits provision requires staffing agencies to determine the value of benefits provided to their temporary workers, compare those with comparable employees of the third-party client, and decide whether to match the benefits of the employer or provide the cash equivalent of the value of the benefits. N.J.S.A. 34:8D-7(b). That dictates a choice for the staffing agency: match the benefits or pay out their value in cash.

Uniform plan administration may also be complicated by the equal benefits provision. Plaintiffs argue that "staffing agencies with employees in more than one state must pay the level of benefits . . .  or the cash equivalent for their New Jersey workers, while offering different benefits to their workers in other states." (ECF No. 54-1 at 17). Such "'tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction' is exactly the burden ERISA seeks to eliminate." *Egelhoff*, 532 U.S. at 151 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)). And to the extent that the equal benefits provision effectively "require[s staffing agencies] to establish a particular ERISA-governed benefit," that is also "readily and routinely . . . preempt[ed]" by ERISA. *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 192 (4th Cir. 2007) (collecting cases). However, it is not clear if the Act requires staffing agencies to establish an ERISA-governed benefit plan.

Further when the Court inquired at argument as to the staffing agencies' experience with administration of the Act thus far and requested details to support Plaintiffs' arguments that it

unreasonably burdens and interferes with ERISA, Plaintiffs were not able to do so. For example, Plaintiffs could not state how many staffing agencies had in fact established ERISA plans in the past year due to the Act, nor how much time was being expended to make an analysis with respect to the provision at issue and to calculate the cost of benefits. Furthermore, Plaintiffs agreed that even if there were such burdens, these burdens would mostly impact self-funded benefit plans. Yet, again, Plaintiffs were not able to tell the Court how many or what percentage of staffing agencies had a self-funded benefit plan, or even provide an estimate in that regard. While the Court recognizes the Plaintiffs need not conclusively establish a likelihood of success on the merits, without these details, and more, the Court cannot find Plaintiffs have met their burden to show a likelihood of success.[13]

Despite that the Court can perceive that there is a potential for success on the merits, at issue at this juncture is that Plaintiffs have provided insufficient factual information upon which the Court can determine the details as to exactly what burden, and to what extent, the equal benefits provision imposes on staffing agencies and their third-party clients. While Plaintiffs have provided declarations of business leaders and staffing agencies generally asserting in conclusory fashion that the Act has caused such a burden, *see* (ECF No. 54 Exs. A–K), they have not provided any declaration from an employee benefits and/or ERISA benefits manager, or even a human resources representative, to specifically attest as to or describe how the equal benefits provision has directly impacted benefit administration. And the declarations they have submitted are wholly conclusory and/or without reference to these very issues. While in most cases this would be a projection as to how the Act may result in such a burden, here the Act has been in place and Plaintiffs have been

---

[13] Indeed, Defendants have indicated that discovery is needed to flesh out these issues in order to make a sufficient record for the Court to make a determination as to the merits of Plaintiffs' ERISA preemption argument. The Court agrees.

complying for a year. Plaintiffs certainly should be aware of and have factual information to support their allegation of a burden.

So while Plaintiffs make out a colorable claim, and while they may ultimately be successful on the merits, weighing all of the relevant factors at this stage, the Court finds that the Plaintiffs' delay, coupled with the public interest and substantial and undisputable alteration of the status quo, outweighs any arguments in support of a preliminary injunction.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for an Order to Show Cause Concerning a Preliminary Injunction, (ECF No. 54), is **DENIED**. An appropriate Order accompanies this Opinion.


**CHRISTINE P. O'HEARN**
**United States District Judge**

14